**ALPHA CAPITAL ANSTALT,**
**et al., Plaintiff,**

v.

**OXYSURE SYSTEMS, INC.,**
**et al., Defendants.**

**15–CV–5443 (VM)**

United States District Court,
S.D. New York.

Signed 05/08/2017

Kenneth A. Zitter, Law Offices of Kenneth A. Zitter, New York, NY, for Plaintiff.

Oxysure Systems, Inc. pro se.

Mazin Ahmad Sbaiti, Sbaiti & Company PLLC, Dallas, TX, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiffs Alpha Capital Anstalt ("Alpha Capital") and Osher Capital Partners, LLC ("Osher,")(collectively, "Plaintiffs") brought this action against defendants Oxysure Systems, Inc. ("Oxysure") and Julian Ross ("Ross") (collectively, "Defendants"), alleging that Defendants breached the terms of the Securities Purchase Agreement ("SPA," Dkt. No. 75–1) entered into by the parties. (Dkt. Nos. 1, 40.) Ross, through two letters dated February 16, 2017, to the Court, requested leave to move to dismiss Plaintiffs' Amended Complaint (Dkt. No. 40) pursuant to Rules 12(b)(2), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure. (Dkt. Nos. 98, 99.) The Court now construes this correspondence as a Motion to Dismiss ("Motion"). For the reasons stated below, the Motion is DENIED.

## I. BACKGROUND

Alpha Capital's Amended Complaint ("Complaint," see Dkt. No. 40) alleges that

Oxysure breached the SPA by: (1) incurring indebtedness over $200,000 and (2) issuing Series C, D and E stock (the "C, D and E Stock"). Alpha Capital seeks the following damages: (1) a preliminary and permanent injunction; (2) damages resulting from the breach of contract; and (3) attorneys' fees.[1]

Osher has also filed a complaint in a related action pending before this Court. (The "Osher Complaint," Case No. 15–cv–9594, see Dkt. No. 1.) The Osher Complaint not only alleges that Oxysure breached the SPA, but that Ross, in his individual capacity, also breached the SPA by: (1) incurring indebtedness over $200,000; (2) issuing the C, D and E stock; and (3) preventing Osher from participating in subsequent financing. Osher asserts claims for: (1) fraud in the inducement against Oxysure; (2) fraud in the inducement against Defendants; (3) market manipulation against Defendants; (4) breach of contract for the sale of variable rate securities against Oxysure; (5) breach of contract for the sale of variable rate securities against Defendants; and (6) breach of contract for failure to deliver shares against Oxysure. Osher requested the following damages: (1) rescission of the contract; (2) recessionary damages; (3) damages for fraudulently inducing Osher to enter into the SPA; (4) damages resulting from the market manipulation; (5) a preliminary and permanent injunction; (6) damages for breach of contract; and (7) attorneys' fees. Alpha Capital's and Osher's cases were consolidated for all purposes. (See Dkt. No. 49.)

Shortly after this Court denied Plaintiffs' Motion for Summary Judgment (Dkt. No. 84), Oxysure filed for bankruptcy in the Eastern District of Texas. (See Dkt.

No. 86.) As a result, this case was stayed pending the disposition of the bankruptcy proceedings. (See Dkt. No. 87.) On January 3, 2017, Plaintiffs requested that the stay be lifted as to Ross, and Alpha Capital renewed its request to amend its complaint to assert individual claims against Ross. (See Dkt. No. 88.) In response, Ross objected to the lifting of the stay and argued that this Court had no grounds to exercise personal jurisdiction over him. (See Dkt. No. 89.) Magistrate Judge Gorenstein subsequently lifted the stay as to Ross, and instructed Ross to file the present Motion. (See Dkt. No. 91.)

Ross now moves to dismiss the Complaint, arguing that: (1) this Court cannot exercise personal jurisdiction over Ross; (2) Plaintiffs have not alleged any basis for holding Ross personally liable for fraud; (3) Plaintiffs have not met the particularity requirements of the Private Securities Litigation Reform Act ("PSLRA") for their fraud and market manipulation claims; (4) Plaintiffs have not pleaded a violation of Regulation M or Rule 10b–5; and (6) Plaintiffs have failed to allege loss causation. (See Dkt. Nos. 98, 99.)

Plaintiffs contend that: (1) the Court has personal jurisdiction over Ross pursuant to the Escrow Agreement entered into between the parties as well as N.Y. C.P.L.R. Sections 302(a)(2) or 302(a)(3); (2) Ross is personally liable for fraud because he personally made fraudulent misstatements in order to manipulate the price of Oxysure securities; (3) Plaintiffs have alleged specific manipulative acts to satisfy the particularity requirement under the PSLRA; (4) Plaintiffs have adequately pled scienter; (5) Plaintiffs do not allege a violation of Regulation M but rather allege

---

1. Alpha Capital requested leave from Magistrate Judge Gorenstein to amend its Complaint to assert personal claims against Ross. (See Dkt. Nos. 85, 90.) Magistrate Judge Gor-enstein instructed Alpha Capital to await the disposition of this Motion before moving to file a second amended complaint. (See Dkt. No. 91.)

that Ross falsely represented that Oxysure had not engaged in any stabilization or manipulation in the price of securities which constitutes a violation of Rule 10b–5; and (6) Plaintiffs have alleged loss causation. (See Dkt. No. 94.)

## II. DISCUSSION

### A. PERSONAL JURISDICTION

#### 1. Legal Standard

■ Upon motion, the Court is required to dismiss an action against any defendant over whom it lacks personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). Upon such motion, the plaintiff "bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); accord DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). Where, as here, the court does not conduct an evidentiary hearing on the issue of personal jurisdiction, "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." DiStefano, 286 F.3d at 84 (citing Bank Brussels Lambert, 171 F.3d at 784). To make this showing, a plaintiff may demonstrate " 'through [its] own affidavits and supporting materials, containing [a good faith] averment of facts that, if credited ..., would suffice to establish jurisdiction over the defendant.' " In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 399 F.Supp.2d 325, 330 (S.D.N.Y. 2005) (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)).

■ When evaluating a motion to dismiss for lack of personal jurisdiction courts "may consider materials outside the pleadings, including affidavits and other written materials[.]" Jonas v. Estate of Leven, 116 F.Supp.3d 314, 323 (S.D.N.Y. 2015). In deciding whether the plaintiff has met this burden, the pleadings and affidavits must be viewed in the light most favorable to the plaintiff, with all doubts resolved in its favor. See, e.g., DiStefano, 286 F.3d at 84; Whitaker, 261 F.3d at 208. "However, conclusory allegations are not enough to establish personal jurisdiction." Gmurzynska v. Hutton, 257 F.Supp.2d 621, 625 (S.D.N.Y. 2003) (internal quotation marks omitted), aff'd, 355 F.3d 206 (2d Cir. 2004); accord Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co., No. 00-cv-5663, 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) ("The plaintiff cannot rely merely on conclusory statements or allegations ...; rather, the prima facie showing must be 'factually supported.' ") (internal citations omitted). Furthermore, under New York law "forum selection clauses are 'prima facie valid and enforceable unless shown by the resisting party to be unreasonable.' " Katzman v. Helen of Troy Texas Corp., No. 12-cv-4220, 2013 WL 1496952, at *2 (S.D.N.Y. Apr. 11, 2013) (citing U.S. Bank Nat'l Ass'n v. Ables & Hall Builders, 582 F.Supp.2d 605, 612 (S.D.N.Y. 2008)).

#### 2. Application

■ Plaintiffs argue that Ross consented to jurisdiction in New York in an Escrow Agreement entered into between the parties. The Escrow Agreement, which was entered into on December 29, 2014, has Ross's signature on it and was executed in conjunction with the SPA. (See Dkt. No. 97.) In fact, the Escrow Agreement specifically references how "the Company and Purchasers have entered into Securities Purchase Agreement for the sale by the Company to the Purchasers of Preferred Stock and Warrants for an aggregate purchase price of $525,000" and that:

This Agreement along with the Company Documents and the Purchase documents constitute the entire agreement between the parties hereto pertaining to the Company Documents and Purchaser

Documents and supersede all prior agreements ... of the parties.

Dkt. No. 97.

The Escrow Agreement also contains a forum selection clause that makes clear that both Ross, as an individual, and Oxysure consented to jurisdiction in New York. The forum selection clause states:

Any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be brought only in the state courts of New York or in the federal courts located in the state of New York. Both parties and the individuals executing this Agreement and other agreements on behalf of the company agree to submit to the jurisdiction of such courts and waive trial by jury.

Dkt. No. 97.

While this clause is more specific regarding Ross's consent in his individual capacity, it is in agreement with the forum selection clause present in the SPA which also mandates exclusive jurisdiction in New York:

Each party ... submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan for adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein ... and hereby irrevocably waives, and agrees not to assert in any action, suit or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action, or proceeding is improper or is an inconvenient venue for such proceeding.

SPA Section 5.9.

Forum selection clauses contained in escrow agreements have generally been found binding on the parties who executed them. See, e.g., Accelecare Wound Centers, Inc. v. Bank of N.Y., No. 08-cv-8351, 2009 WL 1227487, at *2 (S.D.N.Y. May 5, 2009) (case was transferred to the Southern District of New York where the Escrow Agreement contained "a forum selection clause designating New York."); Rubinbaum LLP v. Related Corp. Partners V, L.P., 154 F.Supp.2d 481, 496 (S.D.N.Y. 2001)(denying a motion to transfer where "the parties to the Escrow Agreement agreed that the litigation could be brought in New York"). More specifically, escrow agreements executed simultaneously with other purchase agreements have been dispositive of jurisdictional disputes. See, e.g., Hefton v. Viscern Holding Corp., No. 07-cv-9586, 2008 WL 938938, at *6 (S.D.N.Y. Apr. 7, 2008)("The Escrow Agreement required Plaintiffs to bring any action arising out of it in this Court, absent a jurisdictional defect.").

The language of the Escrow Agreement forum selection clause in this case is identical to the language of a broad forum selection clause analyzed by this Court in Longview Equity Fund, L.P. v. iWorld Projects & Systems, Inc., No. 05-cv-6745, 2008 WL 833230, at *3 (S.D.N.Y. Mar. 26, 2008). In Longview, the President and CEO of iWorld, who was sued in his individual capacity along with the company, signed the contested agreement on behalf of iWorld and later contested jurisdiction. The court found that as the defendant "signed the Agreement in his capacity as President and CEO" he was "bound by the Agreement" and found jurisdiction in New York proper. Id. at *3.

The Court is persuaded that Ross consented to jurisdiction in New York when he executed the Escrow Agreement. As such, the Court finds that Ross is subject to personal jurisdiction in New York.

## B. FRAUD CLAIM

▬ "Officers and directors of a corporation may be held liable for fraud if

they participate in it or have actual knowledge of it." People by Abrams v. Apple Health & Sports Clubs, Ltd., Inc., 80 N.Y.2d 803, 587 N.Y.S.2d 279, 599 N.E.2d 683, 686 (1992); see also Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994) (officers held personally liable for fraud); Nielsen Co. (US), LLC v. Success Sys., Inc., No. 11-cv-2939, 2012 WL 3526625, at *6 (S.D.N.Y. Aug. 13, 2012)("[I]n actions for fraud [officers and directors of a corporation] 'may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally.'") (internal citation omitted). An officer is "individually liable for fraudulent acts or false representations of his own, or in which he participates, even though his actions in such respect may be in furtherance of the corporate business." White v. Nat'l Home Prot., Inc., No. 09-cv-4070, 2010 WL 1706195, at *5 (S.D.N.Y. Apr. 21, 2010) (internal citation and quotation marks omitted). As such, if properly pleaded, Plaintiffs can allege a fraud claim against Ross individually.

Plaintiffs allege that Ross committed fraud in the inducement by making certain misrepresentations to ensure Plaintiffs purchased Oxysure stock. "Under New York law, a claim for fraud in the inducement requires: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Palatkevich v. Choupak, 152 F.Supp.3d 201, 222–23 (S.D.N.Y. 2016)(internal citation and quotation marks omitted). Claims for fraud in the inducement and breach of contract are duplicative when the fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement." Vorcom Internet

Servs., Inc. v. L & H Eng'g & Design LLC, No. 12-CV-2049, 2013 WL 335717, at *4 (S.D.N.Y. Jan. 9, 2013) (citing Bridgestone/Firestone v. Recovery Credit Servs., 98 F.3d 13, 20 (2d Cir. 1996)). "[T]o make out a claim for fraudulent inducement that is sufficiently distinct from a breach of contract claim, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Lorterdan Properties at Ramapo I, LLC v. Watctower Bible & Tract Soc'y of N.Y., Inc., No. 11-cv-3656, 2012 WL 2873648, at *17 (S.D.N.Y. July 10, 2012)(internal citations and quotation marks omitted.) "In sum, fraud in the inducement can be supported by a false statement of present fact, or by a false statement of future intent which concerns a matter collateral to a contract between the parties." Int'l CableTel Inc. v. Le Groupe Videotron Ltee, 978 F.Supp. 483, 491 (S.D.N.Y. 1997). The Osher Complaint alleges that Ross "represented that [Oxysure] had not and would not directly or indirectly take any action designed to stabilize or manipulate the price of any of its securities." (Osher Complaint ¶ 9.) These representations went beyond the language of Section 3.1(ff) of the SPA, which guaranteed that the Company had not "taken, directly or indirectly, any action designed to cause or to result in the stabilization or manipulation of the price of any security of the Company," but remained silent on any future actions of the Company or its officers. (SPA Section 3.1(ff).) Osher further asserts that, both in December 2014 and "on other occasions," Ross "requested other holders of Oxysure convertible securities" to manipulate the price of stock. (Osher Complaint ¶ 11.) If not for these and other misrepresenta-

tions, the Complaint alleges Osher would not have purchased Oxysure stock. (Osher Complaint ¶¶ 9, 15–17.) These allegations, accepted as true, indicate that Ross himself made fraudulent misrepresentations regarding Oxysure stock that resulted in harm to Plaintiffs.

Ross argues that these oral representations, alone, are insufficient to support a fraud claim separate and apart from a breach of contract claim, which Plaintiffs cannot and have not brought against Ross individually. This is a close question, but the cases cited by Ross are distinguishable from this case. Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc. dealt with misrepresentations made by a defendant after entering into a contract with the plaintiff regarding whether or not the defendant would perform its obligations under the contract. 98 F.3d 13, 19 (2d Cir. 1996) There, the fraudulent statements were in conjunction with the already executed contract, making the two claims indistinguishable. See id. ("However, these facts amount to little more than intentionally-false statements by Beladino indicating his intent to perform under the contract."). In this case, however, Plaintiffs allege that if not for Ross's material misrepresentations, they would not have entered into the contract in the first place. (Osher Complaint ¶ 9.) This statement suggests a separate and distinct claim for fraud in the inducement is present here.

Dyncorp v. GTE Corp. relates to a claim of fraud for breaching representations and warranties—whereas here, Plaintiffs' claim is based on a theory of fraud in the inducement. 215 F.Supp.2d 308, 324 (S.D.N.Y. 2002). In re Enron Corp. is, perhaps, the most analogous case Ross cites. There, plaintiffs brought a separate claim for fraud in the inducement based on certain misrepresentations made regarding Enron's financials. No. 04-cv-1367, 2005 WL 356985, at *11 (S.D.N.Y. Feb. 15, 2005).

There, however, the contract at issue provided that, in the event Enron made such misrepresentations, such statements would be considered a default event that triggered certain contractual remedies. See id. ("Thus, in defining an 'Event of Default' to include the precise misrepresentations on which appellants' fraudulent inducement claim is based, the Flagstaff Agreement specifically envisioned the remedies that should be available in the event that those misrepresentations came to light[.]") Given those contractual provisions, the fraud in the inducement claim could not stand independent of the contract claim. See id.

Here, however, the parties do not have an analogous contractual provision allowing for any remedies if Ross or Oxysure made false representations. Furthermore, the misrepresentations that Ross allegedly made went beyond the scope of Section 3.1(ff) of the SPA, which only stated that the Company had not, to that date, taken any actions to manipulate its securities. Ross allegedly stated that the Company had not, and would not in the future, manipulate its securities. These representations went beyond promises to signify "mere undertaking to perform [his] contractual obligations." Aero Media LLC v. World Healing Ctr. Church, Inc., No. 12-cv-5196, 2013 WL 2896856, at *5 (S.D.N.Y. June 11, 2013)(allowed fraud in the inducement claim to proceed where the promises made went beyond what was reduced to writing in the contract.) Plaintiffs allege Ross was not merely promising to follow through on his contractual obligations, but was affirmatively making statements to entice Plaintiffs into purchasing Oxysure stock.

 Fraud in the inducement claims can be supported "by a false statement of present fact, or by a false statement of future intent which concerns a matter collateral to a contract between the parties."

Int'l CableTel Inc., 978 F.Supp. at 491; see also Chase v. Columbia Nat. Corp., 832 F.Supp. 654, 661 (S.D.N.Y. 1993) (holding that a claim for "fraudulent inducement which alleges a misrepresentation of a present fact, not a promise of future intent, which is the inducement for the contract does not duplicate the contract claim and is not barred by the contract"). In this case, Ross allegedly misrepresented a present fact—that Oxysure was not actively attempting to manipulate its stock—as well as making other promises to induce Plaintiffs to enter into the SPA and purchase Oxysure stocks. The Court is persuaded that these allegations are sufficient to support a fraud in the inducement claim against Ross personally.

■ Ross also argues that Plaintiffs have not pleaded their fraud claims with particularity. "Under Rule 9(b), claims of fraud must be plead with particularity and "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Landesbank Baden–Wurttemberg v. Goldman, Sachs & Co., 821 F.Supp.2d 616, 621 (S.D.N.Y. 2011), aff'd, 478 Fed.Appx. 679 (2d Cir. 2012) (citing Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004)). The Osher Complaint meets these requirements as it identifies the fraudulent statements made as those representations by Ross that Oxysure had not and would not manipulate its securities; states that Ross personally made those statements; that those statements occurred in December 2014 in conjunction with the negotiation of the SPA; and that the statements were fraudulent because in December 2014 Ross requested that another holder of Oxysure Securities, JSJ Investments LLC, "refrain from converting or selling Oxysure stocks" in order to manipulate the Oxysure stock price. (Oxysure Complaint ¶¶ 9–10.) These allegations are sufficient to satisfy Rule 9(b)'s particularity requirement.

■ Finally, Ross argues that the integration and merger clauses in the SPA prevent Plaintiffs from bringing a claim for fraud in the inducement. However, "because fraudulent inducement is remedied with rescission of the entire contract including its merger clause, New York courts routinely permit fraudulent inducement claims to go forward although the written contract contains a merger clause." Aero Media LLC v. World Healing Ctr. Church, Inc., No. 12-cv-5196, 2013 WL 2896856, at *5 (S.D.N.Y. June 11, 2013)(internal citation omitted); see also Wall v. CSX Transp., Inc., 471 F.3d 410, 416 (2d Cir. 2006) ("New York also permits the use of parol evidence to prove a claim of fraud in the inducement, even where the written contract contains an integration, or merger, clause.") (citing Deerfield Communications Corp. v. Chesebrough–Ponds, Inc., 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986)). Again, Ross cites authority to support his argument that is inapplicable to this case. The contract at issue in Dunkin' Donuts Franchised Restaurants LLC v. Tim & Tab Donuts, Inc. contained specific disclaimers addressing the basis for the fraud in the inducement claim, including one "addressing any representation made regarding profits and expenses." No. 07-cv-3662, 2009 WL 2997382, at *7 (E.D.N.Y. Sept. 15, 2009). The SPA contains no such specific disclaimers; Section 5.3 merely states:

> The Transaction documents ... contain the entire understanding of the parties with respect to the subject matter hereof and thereof and supersede all prior agreements and understandings, oral or written, with respect to such matters, which the parties acknowledge have

been merged into such documents, exhibits and schedules. SPA Section 5.3.

██ General disclaimers such as this one are not enough to bar a fraud in the inducement claim from proceeding. See, e.g., Aero Media LLC, No. 12-CV-5196, 2013 WL 2896856, at *5 (S.D.N.Y. June 11, 2013).

As such, the Court is persuaded that the allegations in the Osher Complaint are sufficient to support an action for fraud against Ross and are not barred by the general merger and integration clause in the SPA.

## C. PARTICULARITY

██ Plaintiffs' Rule 10b–5 claim of market manipulation must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." In re Initial Pub. Offering Sec. Litig., 241 F.Supp.2d 281, 335 (S.D.N.Y. 2003). "Case law in this circuit and elsewhere has required a showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security. The deception arises from the fact that investors are misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 100 (2d Cir. 2007)(citations omitted). To plead this claim with particularity, Plaintiffs must state "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue[.]" S.E.C. v. U.S. Envtl., Inc., 82 F.Supp.2d 237, 240 (S.D.N.Y. 2000).

██ The Osher Complaint alleges that in December 2014 Ross, on behalf of Oxy-

sure, represented that Oxysure would not, in any way, attempt to manipulate the price of its stock. (Osher Complaint ¶¶ 9, 28.) Plaintiffs allege that this misrepresentation caused Osher to purchase Oxysure stock and made Oxysure stock more valuable. (See id.) These basic allegations identify what manipulative acts were performed—certain misrepresentations made in 2014—who performed those acts—Ross—and the effect those acts had on the market for Oxysure securities—Plaintiffs purchased stock they otherwise would not have. The Court is persuaded that these allegations are sufficient to plead the Rule 10b–5 claim with the requisite particularity.

## D. REGULATION M and Rule 10b–5

First, Plaintiffs made clear in their March 23, 2017, letter that they are not bringing a Regulation M claim against Ross but, rather, that Plaintiffs are bringing a market manipulation claim under Rule 10b–5 against Ross. (See Dkt. No. 94.)

██ To plead a claim of market manipulation under Section 10(b) and Rule 10b–5, a plaintiff must allege with particularity "(1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." Sharette v. Credit Suisse Int'l, 127 F.Supp.3d 60, 77 (S.D.N.Y. 2015). To demonstrate manipulative activity, "allegations of misrepresentations or omissions alone cannot support a claim of market manipulation. Rather, there must be 'wash sales, matched orders, rigged prices, or some other manipulative act intended to mislead investors by artificially affecting market activity.'" Id. (internal citations

omitted). "As long as the market activity involved 'intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities,' and such conduct 'sen[t] a false pricing signal to the market[,]' it falls within the bounds of a deceptive or manipulative device." Dodona I, LLC v. Goldman, Sachs & Co., 847 F.Supp.2d 624, 650 (S.D.N.Y. 2012) (internal citations omitted).

■ Plaintiffs have alleged that Ross and Oxysure made certain misrepresentations regarding actions they would refrain from undertaking with relation to Oxysure stock and, as a result of those misrepresentations, Plaintiffs purchased Oxysure stock when they would not have otherwise, resulting in damages. (Osher Complaint ¶¶ 9–17.) These allegations indicate that Ross and Oxysure intentionally misled the Plaintiffs and undertook a course of conduct to manipulate the price of Oxysure stock. The Court finds that these allegations are sufficient to sustain a Rule 10b–5 claim at this stage.

## D. LOSS CAUSATION

"Loss causation ... is the proximate causal link between the alleged misconduct and the plaintiff's economic harm. To that end, the plaintiff's complaint must plead that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 106–07 (2d Cir. 2007). The Second Circuit has held that " 'the subject of the fraudulent statement or omission' " must be the " 'cause of the actual loss suffered,' i.e. that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." Lentell v. Merrill Lynch & Co., 396 F.3d 161, 173 (2d Cir. 2005).

■ Pleading loss causation with particularity is not required. Therefore, "a short and plain statement that provides the defendant with notice of the loss and its causal connection to the alleged misconduct is therefore sufficient to assert loss causation [.]" Sharette v. Credit Suisse Int'l, 127 F.Supp.3d 60, 80 (S.D.N.Y. 2015).

■ Plaintiffs have alleged that, in order to induce them to purchase Oxysure stock, Ross and Oxysure promised that it would not enter into variable rate transactions or issue more stock, in addition to other representations. Plaintiffs claim that these "representation[s] directly related to the price which" they were willing to pay for Oxysure stock. (Osher Complaint ¶¶ 10–16, 25–29.) The Court finds that these allegations are sufficient to plead loss causation.

### III. ORDER

For the reasons stated above, it is hereby

ORDERED that the motion (Dkt. Nos. 98, 99) of Defendant Julian Ross ("Ross") to dismiss the Complaint (Dkt. No. 40, Case No. 15–cv–9594, Dkt. No. 1.) pursuant to Rules 12(b)(2), 12(b)(6) and 9(b) is **DENIED**.

**SO ORDERED.**