OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
The Attorney-General commenced this special proceeding, pursuant to Executive Law § 63 (12), alleging that, in violation of General Business Law § 622-a, respondent Apple Health and Sports Clubs, Ltd. was operating four health clubs without posting a bond, letter of credit or certificate of deposit *806 with the Secretary of State. The Attorney-General sought (1) to enjoin Apple Health from entering into any new contracts with consumers until it had complied with the requirements of General Business Law § 622-a, and (2) to impose substantial fines and costs. Apple Health thereafter ceased operations and closed down its health clubs.
The Attorney-General amended his petition to include Thur-con Properties, Ltd., the alleged owner of Apple Health, and Harold Thurman, the president and 50% shareholder of both companies. In addition to the relief sought in the first petition, the Attorney-General sought a direction for respondents to pay restitution and damages to club members who had not received the services they had paid for. The trial court granted temporary injunctive relief against all respondents, freezing bank accounts in the name of Apple Health or Thurcon Properties until a trial could be held on the merits and directing respondents to file a $500,000 bond in order to insure the availability of funds owed to health club members and for the payment of civil fines. The Appellate Division affirmed.
Respondents Harold Thurman and Thurcon Properties appeal, contending that they were denied due process by the imposition of the court’s order in the absence of proper notice and a hearing, and that they were improperly joined in the petition and included in the court’s order notwithstanding an absence of evidence establishing that they exercised control over or acted as agents of Apple Health.[1]
The Supreme Court has stated that due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner” (Armstrong v Manzo, 380 US 545, 552). The opportunity must be appropriate to the nature of the case (Mulleme v Central Hanover Trust Co., 339 US 306, 313). The concept of due process is flexible, however, and calls for the procedural protection the particular situation demands (Mathews v Eldridge, 424 US 319, 334).
*807 In the case before us, the dispute between the State and respondents over their lack of compliance with the provisions of the General Business Law had proceeded for some months. Thus, the litigation, once instituted, came as no surprise to the respondents. The prior negotiations with the Attorney-General and the petition clearly apprised respondents of the underlying facts alleged by the Attorney-General and afforded them ample opportunity to raise their opposing contentions on the merits of the petition. They restated these contentions in their answering papers and Supreme Court heard oral argument before issuing its order.
 Under the circumstances, this procedure was constitutionally sufficient and there was adequate support in the record to warrant the temporary relief awarded by the trial court. Moreover, we find no merit to respondents’ contention that the court was without a basis to freeze their bank accounts or impose the bond requirement on them because Apple Health was a completely separate and distinct corporation which was not controlled by Thurman or connected to Thurcon Properties.
Executive Law § 63 (12) authorizes the Attorney-General to prosecute "any person” who engages in "repeated fraudulent or illegal acts or otherwise demonstrate[s] persistent fraud or illegality in * * * conducting * * * business.” The statute defines "fraud” broadly as including "any device, scheme or artifice to defraud and any deception, misrepresentation [or] concealment”. There is abundant evidence that Apple Health was guilty of fraud and persistent illegality in the way in which it conducted business.
Officers and directors of a corporation may be held liable for fraud if they participate in it or have actual knowledge of it (see, Marine Midland Bank v Russo Produce Co., 50 NY2d 31, 44). Not only is it sufficiently likely to be shown at trial that Thurman, as the 50% owner and eventual sole director of Apple Health, had actual knowledge of Apple Health’s fraudulent activities, but there is also evidence in the record that it was Thurman himself who concluded that General Business Law § 622-a did not apply to Apple Health and decided that Apple Health would operate without complying with the statute. As an officer and director with actual knowledge of and participation in Apple Health’s fraudulent and illegal business dealings, Thurman may be held liable for any money owed to club members and any civil fines owed the State. *808 Based on the record, a substantial likelihood existed that the grounds for holding Thurman liable would be established.[2]
There was also a sufficient showing that Apple Health was not separate and distinct from Thurcon Properties. Thur-con Properties had the same two shareholders as did Apple Health and it owned and operated the buildings in which Apple Health operated its health clubs. Moreover, there was evidence that, during negotiations with the Attorney-General, representations were made that Apple Health should be given a waiver from compliance with the General Business Law § 622-a because it was owned by Thurcon Properties, a corporation with substantial assets, and that Thurcon Properties would stand behind Apple Health’s debts. Additionally, there was evidence in the record that membership fees for Apple Health were mailed to Thurcon Properties and that membership cards for Apple Health were issued by Thurcon Properties. Thus, there was a substantial likelihood that petitioner could prove at trial that Thurcon Properties and Apple Health were interlocking corporations and acted in concert in operating the Apple Health clubs, subjecting Thurcon Properties to liability for the fraudulent and illegal activities pursued by Apple Health.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur in memorandum.
Order affirmed, etc.

. [1] Contrary to the assertion of the Attorney-General, respondents’ arguments are not rendered moot by Supreme Court’s decision, issued while this appeal was under advisement, granting his motion for summary judgment against Apple Health and Thurman (People v Apple Health & Sports Clubs, NY County, index No. 40973/91). The motion resolved only the issue of liability. Because the issue of damages persists, as does the issue of liability with respect to Thurman Properties, the order freezing bank accounts and requiring the filing of a $500,000 bond continues to ensure availability of funds while the remaining issues are resolved. Therefore, the propriety of issuing that order remains an issue meriting our review.

. In fact, Supreme Court thereafter granted petitioner summary judgment against Thurman, finding that Thurman, "chief executive officer controlled every aspect of the operation” (People v Apple Health & Sports Clubs, slip opn, at 10 [NY County, index No. 40973/91]).