| People v Abraham Operations Assoc. LLC |
| :---: |
| 2024 NY Slip Op 32976(U) |
| August 23, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 451549/2023 |
| Judge: Melissa A. Crane |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. MELISSA A. CRANE**  PART  **60M**

*Justice*

-----------------------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK,

Plaintiff,

- v -

ABRAHAM OPERATIONS ASSOCIATES LLC DBA BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING, DELAWARE OPERATIONS ASSOCIATES LLC DBA BUFFALO CENTER FOR REHABILITATION AND NURSING, HOLLIS OPERATING CO LLC DBA HOLLISWOOD CENTER FOR REHABILITATION AND HEALTHCARE, SCHNUR OPERATIONS ASSOCIATES LLC DBA MARTINE CENTER FOR REHABILITATION AND NURSING, LIGHT PROPERTY HOLDINGS ASSOCIATES LLC,DELAWARE REAL PROPERTY ASSOCIATES LLC,HOLLIS REAL ESTATE CO LLC,LIGHT OPERATIONAL HOLDINGS ASSOCIATES LLC,LIGHT PROPERTY HOLDINGS II ASSOCIATES LLC,CENTERS FOR CARE LLC DBA CENTERS HEALTH CARE, CFSC DOWNSTATE LLC,BIS FUNDING CAPITAL LLC,SKILLED STAFFING LLC,KENNETH ROZENBERG, DARYL HAGLER, BETH ROZENBERG, JEFFREY SICKLICK, LEO LERNER, REUVEN KAUFMAN, AMIR ABRAMCHIK, DAVID GREENBERG, ELLIOT KAHAN, SOL BLUMENFELD, ARON GITTLESON, AHARON LANTZITSKY, JONATHAN HAGLER, MORDECHAI MOTI HELLMAN,

Defendant.

-----------------------------------------------------------------------------X

| INDEX NO. | 451549/2023 |
|---|---|
| MOTION DATE | 02/13/2024, 02/13/2024 |
| MOTION SEQ. NO. | 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 779, 780, 781, 782, 783, 810, 860

were read on this motion to/for _____ DISMISS _____.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 784, 785, 805, 806, 807, 808, 809, 811, 812, 813

were read on this motion to/for _____ DISMISS _____.

The Attorney General of the State of New York commenced this special proceeding,

pursuant to NY Executive Law § 63 (12), by filing its verified petition on June 28, 2023

451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA
BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL
Motion No.  002 003

Page 1 of 21

1 of 21

[* 1]

(NYSCEF Document Number [Doc] 1 [verified petition]).  In Motions 2 and 3, respondents move to dismiss the petition pursuant to CPLR 3211 (a) (1), (a) (7), and (a) (8).

## Background

The facts are from the petition unless noted otherwise.

Petitioner asserts that the respondents engaged in persistent fraud and illegality in their operation, ownership, and control of four nursing homes: Beth Abraham Center for Rehabilitation and Nursing in the Bronx ("Beth Abraham Center"); Buffalo Center for Rehabilitation and Nursing in Buffalo ("Buffalo Center"); Holliswood Center for Rehabilitation and Healthcare in Queens ("Holliswood Center"); and Martine Center for Rehabilitation and Nursing in White Plains ( "Martine Center") (collectively, the "Nursing Homes").

According to the petition, all of the Nursing Homes are operated by Centers for Care LLC ("Centers").  "Centers controls and manages the Nursing Homes under the guise of providing management consulting services" (Doc 1, ¶ 54).  Petitioner asserts that respondents Kenneth Rozenberg ("Rozenberg") and Darryl Hagler ("Hagler") each hold a 50% ownership interest in Centers (*id.*).  The individual respondents, including Rozenberg and Hagler, are co-owners of the Nursing Homes, the LLCs that own the properties where the nursing homes are located, as well as the companies that operate, manage, or otherwise provide services to the nursing homes.

### The Other Corporate Respondents

Abraham Operations Associates LLC ("Abraham Operations"), d/b/a Beth Abraham Center for Rehabilitation and Nursing, is a for-profit 448-bed nursing home.  Light Operational Holdings Assocs. LLC ("Light Operational") is the 98% owner of Beth Abraham Center, and Rozenberg owns 95% of Light Operational.  Rozenberg's daughter, Rivka Rozenberg, holds the

451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                    Page 2 of 21
GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA
BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL
Motion No.  002 003

2 of 21

remaining 5%. Light Property Holdings Associates LLC ("Light Property") owns the real property where Beth Abraham Center is located and is Beth Abraham's landlord. Hagler owns 99% of Light Property. His son, Jonathan Hagler, owns the other 1%.

Delaware Operations Associates LLC ("Delaware Operations"), d/b/a Buffalo Center for Rehabilitation and Nursing, is a 200-bed for-profit nursing home located in Buffalo. Rozenberg is Buffalo Center's 90% owner and Jeffrey Sicklick is its 10% owner. Delaware Real Property Associates LLC ("Del. Real Property") owns the real property where Buffalo Center is located. Hagler owns 99% of Del Real Property and his son owns the other 1%.

Hollis Operating Co., LLC ("Hollis Operating Co.") d/b/a Holliswood Center for Rehabilitation and Healthcare is a 314-bed for-profit nursing home located at Hollis. It is owned by Rozenberg (95.5%), Sicklick (2.5%), and Leo Lerner (2%). Hollis Real Estate Co., LLC ("Hollis Real Estate") owns the real property where Hollis Center is located. Hagler owns 90% of Hollis Real Estate and Mordechai "Moti" Hellman owns the remaining 10%.

Schnur Operations Associates LLC ("Schnur Associates"), d/b/a Martine Center for Rehabilitation and Nursing, is a 200-bed for-profit nursing home in White Plains. Light Operational owns 65% of Martine Center and the remaining interest is held by Amir Abramchik (10%), David Greenberg (10%), Elliot Kahan (10%), Rozenberg (4%), and Sol Blumenfeld (1%). As noted above, Rozenberg is the 95% owner of Light Operational. Light Property Holdings II Associates LLC ("Light Property II") owns the White Plains real estate where Martine Center is located. Hagler owns 99% of Light Property II and his son Jonathan owns the remaining 1%.

The Nursing Homes paid funds to BIS Funding Capital LLC ("BIS"), owned by Hagler (99%) and his son Jonathan (1%), "purportedly in exchange for software and major movable

**451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL**
**Motion No.  002 003**

**Page 3 of 21**

3 of 21

equipment and other goods and services" (*id.* para 51). CFSC Downstate, LLC ("CFSC Downstate") is a New York limited liability company. Skilled Staffing, LLC ("Skilled Staffing") is a staffing agency owned by Shoshana Areman (majority) and Elisabeth Farkas (minority). Farkas is Rozenberg's daughter-in-law. Skilled Staffing received funds from the Nursing Homes for purported management and consulting services.

**Respondents' Alleged Violations and Repeated and Persistent Fraud and Illegality**

As petitioner notes, New York law imposes a "special obligation" on nursing home operators to provide nursing home residents with "necessary care and services," in accordance with each resident's care plan. New York and Federal law require adequate staffing "to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident" (*see* 10 NYCRR §§ 415.1 (a); 415.3 (f); 415.12; 415.13; 42 CFR § 483.25; *see also* 42 § CFR 483.35; 483.10 (d) (2)). Petitioner asserts that respondents violated Public Health Law ("PHL") § 2803-d (7) by "repeatedly and persistently commit[ing] and tolerat[ing] numerous acts of neglect against residents of the Nursing Homes" (Doc 1 [Petition], ¶ 3). The State asserts that respondents "fail[ed] to provide 'timely, consistent, safe, adequate and appropriate services, treatment and or care . . . including but not limited to: nutrition, medication, therapies, sanitary clothing and surroundings, and activities of daily living,' as defined by 10 NYCRR § 81.1(c)" (*id.*).

Petitioner asserts that the respondents' engaged in "repeated and persistent fraud and illegality" from 2013 through the filing of the petition (*id.*, ¶ 4). The purported misconduct includes respondents':

> "(1) repeated and persistent neglect and inhumane treatment of residents who suffered and died under their care, due to Respondents' repeated disregard for, and violation of applicable laws, including those obligating Respondents to provide required resident care and sufficient staffing to deliver it, and to limit

**451549/2023 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL Motion No. 002 003**

Page 4 of 21

[* 4]

4 of 21

admissions to residents for whom the Nursing Homes were able to provide required care; and (2) a long history of insufficient staffing and resulting poor quality of care that began well before the COVID-19 pandemic, in violation of numerous New York State and federal statutes and regulations, so that the Respondents, including the Nursing Homes' Owners, could covertly transfer millions of dollars in "up-front profit" to themselves from the Nursing Homes. The preventable harm and humiliation suffered by the Nursing Homes' residents resulted from a complex web of corporate entities and fraudulent transactions implemented by Respondents Rozenberg, Hagler, and Centers. This web intentionally turned the Nursing Homes into money-making machines for those who controlled them. Indeed, . . . Respondents covertly extracted exorbitant amounts of money from the Nursing Homes through their collusive relationship, in which Rozenberg is the majority owner of the Nursing Homes, Hagler is the majority owner of the real estate upon which the Nursing Homes sit, and both individuals own Centers, which they used to exercise control"

(*id.*; *see also id.* at n1 [" 'Up-front profit taking' refers to Respondents' practice of making self-negotiated and/or collusive payments from the Nursing Homes to themselves, companies they control, or their Favored Persons disguised as legitimate "expenses" and other transfers of funds, as a priority over, and without regard to, ensuring that the Nursing Homes have used the public funds they received to meet their duty to provide required care, with sufficient staffing to render such care to its residents."]).

Supported by sworn statements of residents, their family members, and Nursing Home staff, as well as analysis of residents' medical records and other evidence, petitioner asserts that respondents repeatedly and persistently neglected their residents and

"illegally disregarded and violated state and federal laws so that they could hide from regulators and the public how many millions of dollars they were extracting from the Nursing Homes, while ignoring and violating the legal duties of the Nursing Homes and their owners to provide required resident care and sufficient staffing to deliver that care, and to limit admissions to residents to whom the Nursing Homes could provide required care"

(*id.* ¶ 5).

**451549/2023 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL Motion No. 002 003**

**Page 5 of 21**

5 of 21

The State seeks declaratory relief, permanent injunctions, restitution, reimbursement of expenses, and statutory costs in connection with the following eleven causes of action:

(1) under § 63 (12), against all respondents, for "Converting $83,810,544 in Government Healthcare reimbursement funds through deception, misrepresentation, and concealment";

(2) under § 63 (12), against Rozenberg, Centers, the Nursing Homes' Operators, and the Nursing Homes' Owners, for falsely certifying compliance with Medicaid rules and regulations;

(3) under § 63 (12), against Rozenberg, Centers, the Nursing Homes' Operators, the Nursing Homes' Owners, the Landlords, Hagler, Jonathan Hagler, and Mordechai "Moti" Hellman, for collusive and/or self-dealing real estate transactions, leases, and loans;

(4) under § 63 (12), against Rozenberg, Centers, Nursing Home Operators, Nursing Home Owners, and Hagler, for failing to obtain DOH approval for withdrawals/transfers, and filing false cost reports with DOH to conceal related party transactions;

(5) under § 63 (12), against Rozenberg, Centers, Nursing Home Operators, and Nursing Home Owners, for insufficient staffing, inadequate resident care, and other violations of the Public Health Law and other NY and federal laws;

(6) under § 63 (12), against Rozenberg, Centers, Nursing Home Operators, Nursing Home Owners, and Hagler, for violating withdrawal and transfer disclosure requirements under Public Health Law § 2808 (5) (c) and 10 NYCRR § 400.19;

(7) under § 63 (12), against Rozenberg, Centers, Nursing Home Operators, Nursing Home Owners, and Hagler, for filing false or misleading cost reports regarding related party transactions in violation of 10 NYCRR part 86-2;

(8) under § 63 (12), against all respondents, for filing false Medicaid claims in violation of 18 NYCRR § 515.2;

(9) under §§ 63 (12) and 63-c, against all respondents, for overpayment of public [Medicaid] funds;

(10) under §§ 63 (12) and 63-c, against all respondents, for illegally obtaining and disposing of Medicaid funds;

**451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY**                      Page 6 of 21
**GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA**
**BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL**
**Motion No.  002 003**

6 of 21

(11) against all respondents, for unjust enrichment that resulted from diverted Medicaid funds.

## Respondents' Motions to Dismiss

In Motion 3, Respondents Beth Abraham, Buffalo Center, Holliswood Center, Martine Center, Centers Health, Light Operational, Skilled Staffing, Kenneth Rozenberg; Beth Rozenberg; Jeffrey Sicklick; Leo Lerner; Reuven Kaufman; Amir Abramchik; David Greenberg; Elliot Kahan; Sol Blumenfeld; Aron Gittleson; Aharon Lantzitsky; and Mordechai "Moti" Hellman (collectively, the "Centers Respondents") move for partial dismissal pursuant to CPLR 3211 (a) (1), (a) (7) & (a) (8).

The Centers Respondents argue that the petition should be dismissed as against certain individual respondents because the allegations are insufficient. They also assert that the court lacks personal jurisdiction over certain respondents, and the applicable statute of limitations bars some of the claims. In addition, the Centers Respondents argue that the Medicaid and Medicare conversion claims [Counts I, VIII, IX, and X] must be dismissed because the government did not retain an interest in those funds once the funds covered services already performed. They argue that these conversion claims should also be dismissed because "the petition fails to trace the funds that were supposedly converted" (Doc 785 [reply mem, MS 03]). The Centers Respondents further urge the court to dismiss the State's claims involving false Medicaid certifications and inflated rents for failure to state a cause of action. The Centers Respondents also assert that: Counts V and VIII must be dismissed because the AG did not account for the COVID crisis; the Tweed Law claims (Counts IX-X) must be dismissed because the Tweed Law does not create a new cause of action; and the unjust enrichment claim (Count XI) should be dismissed because it is duplicative.

**451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY**          **Page 7 of 21**
**GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA**
**BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL**
**Motion No.  002 003**

7 of 21

In Motion 2, Respondents Light Property, Del. Real Property, Hollis Real Estate, Light Property II, CFSC Downstate, BIS Funding, Hagler, and Jonathan Hagler (collectively, the "Real Estate Respondents" or "RE Respondents") move to dismiss the petition in its entirety. The Real Estate Respondents urge the court to dismiss the petition against Jonathan Hagler. They also argue that the petition must be dismissed because it lacks specific allegations against each respondent. Further, the RE Respondents contend that the Medicaid fraud control unit ("MFCU") lacks authority to commence this special proceeding under Section 63 (12). Similarly, they argue that federal law preempts § 63 (12) because Medicaid fraud requires scienter under federal law. In addition, the RE Respondents assert that the summary nature of § 63 (12) deprives them of their state and federal due process rights.

The Centers Respondents and RE Respondents also adopt each other's arguments. The State opposes the motions to dismiss.

## Discussion

In a special proceeding, a respondent "may raise an objection in point of law by setting it forth in [the] answer or by a motion to dismiss the petition, made upon notice within the time allowed for answer" (CPLR 404 [a]; *Cardinale v New York City Dept. of Educ.*, 204 AD3d 994, 997 [2d Dept 2022], *appeal dismissed*, 39 NY3d 966 [2022]). "If the motion is denied, the court may permit the respondent to answer, upon such terms as may be just" (CPLR 404 [a]).

"On a motion to dismiss pursuant to CPLR 404 (a) and 3211 (a) (7), only the petition is considered, all of its allegations are deemed true, and the petitioner is accorded the benefit of every possible favorable inference" (*Cardinale*, 204 AD3d at 997-998, citing *Connaughton v Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 142 [2017]). However, bare legal conclusions are not entitled to such deference.

**451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY**                    **Page 8 of 21**
**GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA**
**BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL**
**Motion No.  002 003**

[* 8]                                                                  8 of 21

## 1. Preliminary Matters

### a. Standing

The court rejects respondents' argument that petitioner lacks standing to maintain this special proceeding under § 63 (12). Contrary to respondents' contention, the Attorney General is the petitioner, not the Medicaid Fraud Control Unit (MFCU). MFCU is a part of the Attorney General's Office (*e.g. Moe v Kuriansky*, 120 AD2d 594, 595 [2d Dept 1986 [the AG "ultimately control(s) (MFCU's) work"]). In any event, MFCU is authorized under state law (Exec. Order 4) and federal law (42 CFR § 1007.1 *et seq.*) to investigate and prosecute, or refer for prosecution, "violations of all applicable State laws, including criminal statues, as well as civil false claims statutes or other civil authorities, pertaining to . . . Fraud in the . . . provision of medical assistance, or the activities of providers" (42 CFR § 1007.11[a]).

### b. Personal Jurisdiction

The court has jurisdiction over the respondents. Contrary to respondents' contentions, jurisdiction over Hellman, Kaufman, Greenberg, Blumenfeld, and Jonathan Hagler is appropriate under CPLR 302 (a) (1). The petition adequately establishes that these respondents transact business in New York. Long-arm jurisdiction may be asserted over these respondents by virtue of their membership interests in certain respondent entities. In addition, the court has jurisdiction over Hellman and Jonathan Hagler because they are members of LLCs that own New York properties (CPLR 302 [a] [4]).

Briefly, Hellman has transacted business in the state. He is a member of Hollis Real Estate, that owns the Holliswood property, and received equity distributions from Holliswood's rents. Kaufman, Greenberg, and Blumenfeld own or owned parts of the operating respondents Holliswood Center and Martine Center, both located in New York, and they filed certifications

**451549/2023 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL
Motion No. 002 003**

**Page 9 of 21**

9 of 21

[* 9]

and other documentation to the New York State Public Health and Health Planning Council (PHHPC) when these operator entities acquired their nursing homes. Jonathan Hagler is a 1% owner of Light Property, Light Property II, Del. Real Property, and BIS Funding. He is also a 10% owner of CFSC Downstate. Jonathan Hagler transacted business, either directly or through an agent, by virtue of his membership interests in these New York businesses. The claims against these respondents directly arise from their contacts with the state and the court's exercise of jurisdiction over the out-of-state respondents comports with due process.

   c. *Statute of Limitations*

The statute of limitations for petitioner's claims is 6 years (*see* CPLR 213 [9] [§ 63 (12) claims], CPLR 213 [5] [§ 63-c claims], CPLR 213 [1] [unjust enrichment claims]). The parties agree that the limitations period was tolled for 228 days during the pandemic (*see* Doc 811 [resp reply mem] at 25). The petitioner argues that the "continuing wrong" doctrine extends the limitations period. Respondents argue that the petition does not allege continuing wrongs and that wrongful conduct that occurred before November 12, 2016 is time-barred. November 12, 2016 is 6 years and 228 days prior to the date that the AG filed the petition on June 28, 2023.

The "continuing wrong" doctrine "is usually employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act" (*Selkirk v State of New York*, 249 AD2d 818, 819 [3d Dept 1998]). This doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct" (*id.*).

Respondents fail to establish that the continuing wrong doctrine is inapplicable. The petition asserts that respondents engaged in repeated and persistent schemes involving fraud and illegality. For example, Rozenberg and Hagler allegedly colluded to force Holliswood to pay

**451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY**
**GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA**
**BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL**
**Motion No. 002 003**

Page 10 of 21

10 of 21

inflated rental payments pursuant to an exorbitant lease. The lease was executed in 2013 but rent payments began in 2014 and continued until 2020. Contrary to respondents' contention, the harm did not occur in 2013 when the lease was entered, it began at the earliest in 2014 when Holliswood's minimum rent increased by 93% over the rent rate that respondents submitted to DOH, and the harm continued throughout the lease term. The petitioner's claims are not breach of contract claims where, for instance, the claim would accrue on the date of the breach, even if the harm results later (*see e.g. Clark v Metropolitan Transp. Auth.*, 46 Misc 3d 344, 350 [Sup Ct, NY County 2013]). Here, instead, the AG alleges that the respondents orchestrated multiple ongoing illegal schemes to divert nursing home assets to themselves. As set forth in the petition (*see e.g.* Doc 1, ¶ 15), these alleged schemes include:

- Causing the Nursing Homes to enter into collusive real estate arrangements that saddled the homes with excessive debts and forced them to pay falsely inflated rents to real estate companies owned by Hagler;
- Extracting millions of dollars from the Nursing Homes through collusive related party transactions, including the payment of "fees" to sham vendors owned in whole or part by Rozenberg, Hagler, and/or their family members;
- Causing the Nursing Homes to make interest-free loans to other nursing homes owned and operated by Rozenberg for no discernable business purpose, which deprived the Nursing Homes of funds to spend on staffing; these loans were rarely repaid in full, if at all; and
- Causing the Nursing Homes to pay purported "salaries" to their owners – salaries that were frequently unreported, inflated, and in some instances, indicative of no show jobs, in that the purported "salaries" bore no relationship to any work supposedly performed.

Thus, petitioner's allegations assert a repeated and persistent scheme to funnel up-front profits away from the nursing homes to the respondents in violation of applicable regulations (*cf e.g. Selkirk v State*, 249 AD2d 818, 819 [3d Dept 1998] [continuing wrong doctrine may apply where the harms constitute "continuing unlawful acts," as opposed to "continuing effects of earlier unlawful conduct"]; *People v Trump*, 62 Misc 3d 500, 508 [Sup Ct 2018] [applying the

451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                                    Page 11 of 21
GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA
BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL
Motion No.  002 003

11 of 21

[* 11]

continuing wrong doctrine where "respondents' alleged continuous and pervasive failure to operate and manage the" business "in accordance with . . . statutory rules and fiduciary obligations" resulted "in the misuse of [business] assets and self-dealing"]). Accordingly, at this pre-answer stage, and under the circumstances presented in the petition, respondents have not sufficiently demonstrated, as a matter of law, that they are entitled to dismissal because the claims are time-barred.

Even if the continuing wrong doctrine does not apply, the fraudulent concealment doctrine may toll the period. Executive Law § 63 (12) "claims may be tolled under the fraudulent concealment doctrine" (*New York v Feldman*, 2003-2 Trade Cases P 74102 [SDNY July 10, 2003]). The State alleges in the petition that Rozenberg and Hagler "caused the Nursing Homes to take (or be obligated to fund) Related-Party loans with exorbitant interest rates to finance their purchases of certain Nursing Homes," and "caused the realty companies to take commercial loans with principal amounts that were higher than necessary to acquire the Nursing Homes, leaving the Nursing Homes to repay that debt while" respondents collected up-front profits (Doc 1, ¶ 413).

The State asserts that respondents deceived DOH and concealed their misconduct by

"(i) taking out a series of inflated mortgages and saddling the Nursing Homes with the responsibility to pay the debt, while pocketing excess proceeds; (ii) misleading DOH about the lease agreements and pocketing millions of dollars in purported rent; (iii) submitting false and misleading annual Cost Reports; and (iv) withdrawing equity far in excess of 3% without obtaining prior permission from DOH through collusive transactions"

(Doc 805 [petitioner's mem opp] at 47, citing petition [Doc 1], §§ VIII [A] [mortgages and leases], VIII [D] [3] [Cost Reports], VIII [E] [equity withdrawals]).

Petitioner asserts that the Nursing Home Operators and Nursing Home Owners concealed this persistent fraud and illegality by "flout[ing] DOH rules, . . . failing to disclose related party

**451549/2023 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL Motion No. 002 003**      Page 12 of 21

12 of 21

transactions on the Nursing Homes' cost reports[,] . . . [and] ignoring[ing] . . . the rules and regulations that prohibit transfers of funds from nursing homes without DOH approval" (*e.g.* Petition, ¶ 16). Thus, treating the allegations in the petition as true at this pre-answer stage, respondents do not establish as a matter of law that the fraudulent concealment doctrine fails to toll the limitations period.

### d.  *Respondents' due process rights, generally*

The RE Respondents assert that the summary nature of an Executive Law § 63 (12) special proceeding will deprive them of their due process rights. They argue that the court should convert this special proceeding to a plenary action.

"The Supreme Court has stated that due process requires an opportunity to be heard 'at a meaningful time and in a meaningful manner' " (*People v Apple Health and Sports Clubs, Ltd., Inc.*, 80 NY2d 803, 806 [1992] [citations omitted]). "The opportunity must be appropriate to the nature of the case" (*id.*, citing *Mullane v Central Hanover Trust Co.,* 339 US 306, 313 [1950]).

Respondents contend that the "sprawling Petition is the result of a 3-year investigation, but the Real Estate Respondents have not been provided any meaningful opportunity to respond" (Doc 780 [RE Respondents' mem] at 20-21). They are incorrect. Here, as in *Apple Health I*, the Executive Law § 63 (12) procedures are constitutionally sufficient. Respondents were involved in the pre-litigation investigation and had opportunities to be heard before the state filed the petition (*see People v Apple Health and Sports Clubs, Ltd., Inc.*, 80 NY2d 803, 807 [1992] ["Thus, the litigation, once instituted, came as no surprise to the respondents. The prior negotiations with the Attorney-General and the petition clearly apprised respondents of the underlying facts alleged by the Attorney-General and afforded them ample opportunity to raise their opposing contentions on the merits of the petition."]). Since the AG filed the petition,

451549/2023  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA
BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL
Motion No. 002 003

Page 13 of 21

13 of 21

respondents have been heard at oral argument on their motions for discovery and these motions to dismiss. They will also have the opportunity to be heard later in this case when they submit their answers, affidavits, and other evidence. They will also have the opportunity to appear for future oral arguments, hearings, and trials, as may be necessary. Under the circumstances, this summary proceeding does not deprive the respondents of their procedural due process rights.

## 2. Petitioner States Viable Executive Law § 63 (12) Claims

### a. Petitioner's § 63 (12) claims, generally

Executive Law § 63 (12) "defines the fraudulent conduct that it prohibits, authorizes the Attorney General to commence an action or proceeding to foreclose that conduct, and specifies the relief, including equitable relief, that the Attorney General may seek" (*People v Trump Entrepreneur Initiative LLC*, 137 AD3d 409, 417 [1st Dept 2016]).

Executive Law § 62 (12) states:

"Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages and, in an appropriate case, cancelling any certificate filed under and by virtue of the provisions of section four hundred forty of the former penal law or section one hundred thirty of the general business law, and the court may award the relief applied for or so much thereof as it may deem proper."

"A special proceeding, as authorized by Executive Law § 63 (12), is intended as an expeditious means for the Attorney-General to prevent further injury and seek relief for the victims of business fraud" (*People v Apple Health and Sports Clubs, Ltd., Inc.*, 206 AD2d 266, 268 [1st Dept 1994]). In the context of a § 63 (12) proceeding,

"[t]he word 'fraud' or 'fraudulent' . . . shall include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions. The term

**451549/2023 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL Motion No. 002 003**

Page 14 of 21

14 of 21

'persistent fraud' or 'illegality' . . . shall include continuance or carrying on of any fraudulent or illegal act or conduct. The term 'repeated' as used herein shall include repetition of any separate and distinct fraudulent or illegal act, or conduct which affects more than one person"

(Exec. Law § 63 [12]).

Thus, fraud claims under § 63 (12) are broader than common law fraud and can be established without proof of scienter or reliance (*see People v Trump Entrepreneur Initiative LLC*, 137 AD3d 409, 417 [1st Dept 2016]; *People v Coventry First LLC*, 52 AD3d 345, 346 [1st Dept 2008]). "The test for fraud under Executive Law § 63 (12) is whether the targeted act has the capacity or tendency to deceive or creates an atmosphere conducive to fraud" (*People v Northern Leasing Sys., Inc.*, 193 AD3d 67, 68 [1st Dept 2021]).

Executive Law § 63 (12) claims have been applied to a wide array of respondents, including persons with knowledge of fraudulent schemes, individuals who perpetrated those schemes, and pass-through entities and knowing recipients of fraudulently obtained proceeds (*see People v Leasing Expenses Co. LLC*, 199 AD3d 521, 523 [1st Dept 2021]; *see also e.g. People v Northern Leasing Sys., Inc.*, 169 AD3d 527, 528 [1st Dept 2019]; *People v One Source Networking, Inc.*, 125 AD3d 1354, 1357 [4th Dept 2015] ["Because Executive Law § 63 (12) allows the Attorney General to seek relief against 'any person,' there is no impediment to imposing personal liability against a corporate officer if it is established that he [or she] personally participated in or had actual knowledge of the fraud or illegality."] [quotations omitted]; *People v Apple Health and Sports Clubs, Ltd., Inc.*, 80 NY2d 803, 808 [1992] [finding that "interlocking corporations" that "acted in concert" can be liable for fraudulent and illegal activities]; *People v Cold Spring Acquisition, LLC D/B/A Cold Spring Hills Center for Nursing & Rehabilitation*, Index No. 617709/2022 [Sup Ct, Nassau County 2022] [involving nursing homes, their operators, and owners, and related real estate entities]; *People v Fulton Commons*

451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                    Page 15 of 21
GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA
BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL
Motion No.  002 003

15 of 21

*Care Center, Inc.*, Index No. 617687/2022 [same]). That is, parties outside of an organization who have knowledge of the organization's unlawful acts and have received the benefits of those unlawful acts can be held liable under § 63 (12).

Executive Law § 63 (12) was "meant to protect not only the average consumer, but also the ignorant, the unthinking and the credulous" (*State v Northern Leasing Sys. Inc.*, 193 AD3d at 75). Section 63 (12) actions have also been maintained on behalf of the people of New York (*e.g. People v Sprint Nextel Corp.*, 26 NY3d 98, 109 [2015]), and "to recover overpayments of reimbursements" paid by New York's Medicaid program (*e.g. People v Pharmacia Corp.*, 39 AD3d 1117, 1118 [3d Dept 2007]).

The petition sufficiently alleges that respondents repeatedly engaged in fraud and illegal behavior by filing false and misleading Medicaid certifications, violating other Medicaid program regulations, paying fraudulent and collusive fees to related party service providers, and orchestrating fraudulent real estate schemes based on fraudulent loans. The petition also alleges that respondents used these fraudulent and illegal activities to extract millions of dollars from the nursing homes that were then diverted to respondents in violation of Medicaid, PHL, and DOH rules and regulations, including the Nursing Home's obligations to provide required care, maintain adequate staffing, and to limit admissions. In addition, petitioner sufficiently alleges a basis for the requested relief, including disgorgement and restitution of improperly diverted Nursing Home assets, sham rent payments that violated the 3% rule, and misappropriated Medicaid and other government funds.

*b. Preemption*

Next, the court rejects respondents' contention that federal law preempts Executive Law § 63 (12). Section 63 (12) is not in conflict with 42 CFR § 1007.1. 42 CFR § 1007.1 defines

**451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                     Page 16 of 21
GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA
BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL
Motion No. 002 003**

[* 16]                                                          16 of 21

fraud as "any act that constitutes criminal or <u>civil fraud under applicable State law</u>. Such conduct *may* include deception, concealment of material fact, or misrepresentation made intentionally, in deliberate ignorance of . . . or in reckless disregard of the truth." This definition of fraud in the CFR *permits* but *does not require* a minimum mens rea element.

c. *Executive Law claims against certain individual respondents*

The court also denies the motion to dismiss certain respondents from this special proceeding. Individual respondents Kenneth Rozenberg, Beth Rozenberg, Jeffrey Sicklick, Amir Abramchik, Elliot Kahan, David Greenberg, Sol Blumenfeld, Aron Gittleson, Aharon Lantzitsky, Reuven Kaufman and Leo Lerner (collectively, the "Nursing Home Owners") may be held liable under the Public Health Law ("PHL"). PHL § 2808-a (2) defines "controlling person" as any person who "by reason of a direct or indirect ownership interest (whether of record or beneficial) has the ability, acting either alone or in concert with others with ownership interests, to direct or cause the directions of the management or policies of said facility." Any "controlling person" that is liable under the PHL "shall also be liable, jointly and severally, with and to the same extent as" the associated nursing home (PHL § 2808-1 [1]). As petitioner notes, "liability and responsibility follow the capability to make a profit" (Doc 805 [Petitioner's mem opp] at 17, quoting *Ocean Side Inst. Indus. v United Presby. Residence*, 254 AD2d 337, 338 [2d Dept 1998] [discussing legislative history]). The court denies the motion to dismiss petitioner's sixth cause of action, under § 63 (12), for the Nursing Home Owners' alleged PHL violations.

Further, although some of the respondents may not have had any responsibility to provide care to nursing home residents, or may not have directly engaged in the alleged fraudulent activities, the petition states a § 63 (12) claim against all respondents. Individuals may be liable under § 63 (12) if they participated in the fraudulent conduct or if they had actual knowledge of

**451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY**                    **Page 17 of 21**
**GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA**
**BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL**
**Motion No.  002 003**

17 of 21

the conduct (*People v Apple Health & Sports Clubs, Ltd.*, 80 NY2d 803, 807 [1992]), and parties who "turned a blind eye to evidence" of fraudulent activities can also be held liable (*People v College Network, Inc.*, 53 Misc 3d 1210(A) [Sup Ct, Albany County 2016]).

Likewise, the court denies the motion to dismiss the claims against Hagler, individually. The petition is plainly sufficient as to Hagler because he is a 50% owner of Centers, is Centers' CFO, and is the majority owner of the Landlord entities. In addition, the petition states claims against the minority owners of the Nursing Home Operators and the Landlords (the "Minority Owners"). Viewing the petition in the light most favorable to the State, the Minority Owners knew, or should have known, about the fraudulent or illegal conduct and failed to prevent that conduct. The Minority Owners all benefited from the alleged fraudulent conduct and some purportedly participated in the conduct signing Certificate of Need applications, holding positions at the nursing homes, or serving as consultants, and by accepting sham salaries (*see e.g.* Petition, ¶¶ 56-65, 235-236, 239, 249-269, 309, 605-609, 617-620, 628, 643-666; *see also* Petitioner's mem opp at 22-28).

Finally, for the purposes of this pleading, the individual respondents may be liable for the fraudulent or illegal acts that other respondents allegedly committed (*e.g. People v General Elec. Co.*, 302 AD2d 314, 317 [1st Dept 2003] [finding third-party liability under § 63 [12] using agency theory]). In *People v Northern Leasing Sys., Inc.* (193 AD3d 67 [1st Dept 2021]), the First Department held that a respondent's failure to supervise adequately "created an enterprise conducive to fraud" that violated § 63 (12) (*id.* at 75). The respondents may also be liable under an aiding and abetting theory (*see People v College Network, Inc.*, 53 Misc 3d 1210(A) [Sup Ct, Albany County 2016]).

  d.  *Other contentions*

**451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL**
**Motion No.  002 003**

**Page 18 of 21**

18 of 21

Respondents have not established that dismissal of resident care claims is warranted. They argue that the COVID pandemic excuses their failures to provide adequate care to the Nursing Home's residents. At most, these matters raise issues of fact that cannot be resolved on these motions. Similarly, the court rejects respondents' contention that they are entitled to immunity under the now-repealed Emergency Disaster Treatment Protection Act ("EDTPA"). Respondents have not met their burden of establishing that the claims in the petition fall within the scope of the EDTPA. The alleged violations began before the pandemic and continued until the filing of the petition. Moreover, EDTPA immunity does not extend to gross negligence, reckless conduct, or intentional misconduct (*see* PHL § 3082 [2]).

Respondents have also failed to establish that DOH waived the Nursing Homes' obligations to maintain adequate staffing levels at the facilities.

### 3. Petitioner's Executive Law § 63-c claims

Executive Law § 63-c (the "Tweed Law") provides:

"Where any money, funds, credits, or other property, held or owned by the state, or held or owned officially or otherwise for or in behalf of a governmental or other public interest, by a domestic, municipal, or other public corporation, or by a board, officer, custodian, agency, or agent of the state, or of a city, county, town, village or other division, subdivision, department, or portion of the state, has heretofore been, or is hereafter, without right obtained, received, converted, or disposed of, an action to recover the same, or to recover damages or other compensation for so obtaining, receiving, paying, converting, or disposing of the same, or both, may be maintained by the state in any court of the state, . . . although a right of action for the same cause exists by law in some other public authority, and whether an action therefor in favor of the latter is or is not pending when the action in favor of the state is commenced. The attorney-general shall commence an action, suit or other judicial proceeding, as prescribed in this section, whenever he deems it for the interests of the state so to do; or whenever he is so directed, in writing, by the governor."

Executive Law § 63-c proceedings can be used to recover misappropriated Medicaid funds (*e.g. Cuomo v Ferran*, 77 AD3d 698, 701 [2d Dept 2010] ["The Tweed Law vests the

**451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY**      **Page 19 of 21**
**GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA**
**BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL**
**Motion No.  002 003**

19 of 21

Attorney General with the discretionary authority to seek the recovery of money or property (other than real property) belonging to the State, or to recover damages or other compensation, or both, pursuant to any viable action or proceeding at law or in equity available to the State."]). Contrary to respondents' contentions, liability under § 63-c does not require satisfying the elements of common law conversion. Indeed, § 63-c "e "vests the Attorney General with the discretionary authority to seek the recovery of money or property . . . belonging to the State . . . , or to recover damages or other compensation for the same, or both, pursuant to any viable action or proceeding at law or in equity available to the State" (*State v Grecco*, 21 AD3d 470, 477 [2d Dept 2005]). The petitioner need not prove that the respondents knew that the Medicaid funds were obtained "without right" (Executive Law § 63-c [1]).

Here, the petition alleges that the respondents committed, or were complicit in, the collection of Medicaid funds "without right," for example, by filing false or misleading Medicaid certifications, otherwise violated Medicaid program regulations, and paying fraudulent and collusive fees to related party service providers. These allegations are sufficient to survive this motion to dismiss the Tweed Law claims.

### 4. Petitioner's unjust enrichment claim

Unjust enrichment is an equitable quasi-contract claim that "depends upon broad considerations of equity and justice" (*Columbia Mem. Hosp. v Hinds*, 38 NY3d 253, 275 [2022]).

> "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. A plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered"

451549/2023 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA
BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL
Motion No. 002 003

Page 20 of 21

20 of 21

(*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011] [internal citations and quotation marks omitted]).

"Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated" (*id.* at 182). The claimant must allege "a relationship between the parties, or at least an awareness" of the other party (*id.*).

Respondents argue that this claim should be dismissed because it is duplicative. First, the court finds that the unjust enrichment claim is pleaded sufficiently. Next, the court declines to dismiss this claim as duplicative at this pre-response stage because Petitioner may assert it as an alternative basis for relief.

**5. Conclusion**

The court has considered the respondents' remaining contentions and finds them unavailing.

Accordingly, it is

ORDERED that respondents' motions to dismiss, MS 02 and 03, are denied; and it is further

ORDERED that the respondents shall respond to the petition within 20 days from the e-filed date of this decision and order.

20240823165245MACRANE9B4E4E0D2CE846BD8A838FBD084F88BD

| **8/23/2024** | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | **MELISSA A. CRANE, J.S.C.** | |
| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | | |
| | ☐ GRANTED | ☒ DENIED | ☐ GRANTED IN PART | | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | | ☐ REFERENCE |

451549/2023   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. ABRAHAM OPERATIONS ASSOCIATES LLC DBA BETH ABRAHAM CENTER FOR REHABILITATION AND NURSING ET AL
Motion No.  002 003

Page 21 of 21

21 of 21