| People v Yellowstone Capital LLC |
|:---:|
| 2026 NY Slip Op 30767(U) |
| March 4, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 450750/2024 |
| Judge: Paul A. Goetz |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: | HON. PAUL A. GOETZ | PART 47 |
| | *Justice* | |

------------------------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK,

                                          Petitioner,

                          - v -

YELLOWSTONE CAPITAL LLC,FUNDRY LLC,DELTA BRIDGE FUNDING LLC,CLOUDFUND LLC,ABC MERCHANT SOLUTIONS, LLC,ADVANCE MERCHANT SERVICES LLC,BUSINESS ADVANCE TEAM LLC,CAPITAL ADVANCE SERVICES LLC,CAPITAL MERCHANT SERVICES, LLC,CASH VILLAGE FUNDING LLC,FAST CASH ADVANCE LLC,FUNDZIO LLC,GREEN CAPITAL FUNDING LLC,HFH MERCHANT SERVICES LLC,HIGH SPEED CAPITAL LLC,MERCHANT CAPITAL PAY LLC,MERCHANT FUNDING SERVICES LLC,MIDNIGHT ADVANCE CAPITAL LLC,MR. ADVANCE CAPITAL LLC,OCEAN 1213 LLC,SIMPLY EQUITIES LLC,TVT CAP FUND LLC,TVT CAPITAL HR, LLC,THRYVE CAPITAL FUNDING LLC,WCM FUNDING LLC,WEST COAST BUSINESS CAPITAL, LLC,WORLD GLOBAL CAPITAL LLC,DAVID GLASS, YITZHAK STERN, JEFFREY REECE, BARTOSZ MACZUGA, VADIM SEREBRO, TSVI DAVIS, AARON DAVIS, MATTHEW MELNIKOFF, MARK SANDERS, DAVID SINGFER

                                          Respondents.

------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 450750/2024 |
| MOTION DATE | 02/20/2025, 02/20/2025, 02/20/2025 |
| MOTION SEQ. NO. | 001 003 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 486, 497, 499, 513, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533, 534, 535, 536, 537, 538, 539, 540, 548, 549, 550, 551, 552, 553, 554, 555, 556, 561, 562, 563, 564, 565, 581, 589, 590, 591, 592, 593, 599, 600, 604, 606, 607, 608, 628, 631, 632, 633, 634, 635, 636, 637, 638, 639, 656, 661, 669

were read on this motion to/for                    MISC. SPECIAL PROCEEDINGS                    .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 566, 567, 568, 569, 570, 571, 572, 584, 585, 595, 602, 609, 621, 629, 641, 658, 659, 660, 664, 670

were read on this motion to/for                    DISMISS                    .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 557, 558, 559, 560, 597, 601, 630, 640, 657, 663, 671

were read on this motion to/for                    DISMISSAL                    .

**450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL**
**Motion No.  001 003 005**

Page 1 of 28

1 of 28

[* 1]

In this special proceeding pursuant to Executive Law § 63(12), petitioner, the People of the State of New York, by Letitia James, Attorney General of the State of New York, (hereinafter "NYAG") seeks an order (MS #1) enjoining respondents from issuing, Merchant Cash Advances ("MCAs"), which according to the NYAG are illegal usury loans. Respondents Mark Sanders and Matthew Melnikoff (NYSCEF Doc No 517), David Singfer (NYSCEF Doc No 532), Aaron Davis (NYSCEF Doc No 548), David Glass (NYSCEF Doc No 551) and Tsvi (Steve) Davis (NYSCEF Doc No 561) move to dismiss the petition as against them, or in the alternative, cross-move to convert this proceeding into a plenary action. Respondents, Delta Bridge Funding, LLC, Cloudfund LLC, and Bartosz Maczuga, move separately (MS #3) to dismiss the petition along with respondent, Vadim Serebro (MS #5). All other respondents in this action have settled pursuant to Consent Orders (*see* NYSCEF Doc No 622;[1] NYSCEF Doc No 625[2]).

## BACKGROUND

The Yellowstone Entities, Yellowstone, Fundry, and the Yellowstone Subsidiaries, are New York limited liability companies that issued MCAs to business from approximately 2009 to 2021 (NYSCEF Doc No 1 at ¶¶ 26 – 58). Respondent Delta Bridge Funding LLC ("Delta Bridge") is a limited liability company organized under Delaware law in 2021 (*id*. at ¶ 70). Respondent CloudFund LLC ("CloudFund") is a limited liability company organized under New

---

[1] Consent Order settling matter for respondents, Yellowstone Capital LLC ("Yellowstone"), and Fundry LLC ("Fundry"), ABC Merchant Solutions, LLC, Advance Merchant Services LLC, Business Advance Team LLC, Capital Advance Services LLC, Capital Merchant Services, LLC, Cash Village Funding LLC, Fast Cash Advance LLC, Fundzio LLC, Green Capital Funding LLC, HFH Merchant Services LLC, High Speed Capital LLC, Merchant Capital Pay LLC, Merchant Funding Services LLC, Midnight Advance Capital LLC, Mr. Advance Capital LLC, Ocean 1213 LLC, Simply Equities LLC, TVT Cap Fund LLC, TVT Capital HR, LLC, Thryve Capital Funding LLC, WCM Funding LLC, West Coast Business Capital LLC, World Global Capital LLC (ABC Merchant Solutions, LLC through World Global Capital LLC collectively "Yellowstone Subsidiaries"; Yellowstone, Fundry and Yellowstone Subsidiaries together "Yellowstone Entities").
[2] Consent Order settling matter for respondents, Yitzhak ("Isaac") Stern ("Isaac Stern") and Jeffrey Reece.

**450750/2024 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL Motion No. 001 003 005** Page 2 of 28

2 of 28

[* 2]

York law (*id.* at ¶ 73). Petitioner alleges that Delta Bridge and CloudFund operate as a common enterprise and are the legal successor to the Yellowstone Entities (*id.* at ¶¶ 75 – 82). Respondents, David Glass, Isaac Stern, and Jeffrey Reece are executives and partial owners of the Yellowstone entities (*id.* at ¶ 83). Respondent, Bartosz Maczuga is the CEO, majority owner, and co-founder of Delta Bridge, and the former co-CEO and partial owner of the Yellowstone Entities (*id.*). Respondent, Vadim Serebro is a part-owner and co-founder of Delta Bridge as well as the current general counsel of Delta Bridge and Yellowstone (NYSCEF Doc No 1 ¶ 83). Respondents, Aaron Davis, Tsvi Davis, Matthew Melnikoff, Mark Sanders, and David Sinfger are "funders" of both Yellowstone and Delta Bridge (*id.*).

Respondents' MCA transactions consist of lump sum payments to merchants, in exchange for payments from the merchants' future receivables (*id.* at ¶ 123). Yellowstone and Delta Bridge operate through individuals known as "funders" who invest funds in the MCAs they manage and share in the resulting profits and losses. (*id.* at ¶ 98). The NYAG alleges that while Yellowstone and Delta Bridge purport to offer businesses MCAs, the transactions, are in fact loans, and they charged higher than permissible rates under New York usury laws, thereby rendering them usurious and illegal (*id.* at ¶ 121). The NYAG alleges that the structure of these agreements is intended to cloak what would be otherwise an illegal usurious loan, in the guise of legality by referring to it as an MCA (*id.* at ¶ 129).

The NYAG asserts six causes of action against respondents and seeks a summary determination in its infere. Petitioner's six causes of action are as follows: As against All Respondents: 1) Pursuant to Executive Law § 63(12)[3]: Illegal Acts in the Form of Usury; 2)

---

[3] Executive Law § 63(12) empowers the Attorney General to "when apprised of the persistent fraud or illegality of a business … to bring an enforcement action seeking an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, [and] directing restitution and damages" (*People ex rel. Cuomo v Coventry First LLC*, 13 NY3d 108, 114 [2009]).

**450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL Motion No.  001 003 005**

**Page 3 of 28**

3 of 28

Pursuant to Executive Law § 63(12): Illegal Acts in the Form of Criminal Usury; 3) Pursuant to Executive Law § 63(12) Illegal Acts in the Form of Engaging in the Business of Making High-Interest Loans without a License in Violation of Banking Law §§ 240 and 356; 4) Pursuant to Executive Law § 63(12): Fraud; 5) Pursuant to Executive Law § 63(12) Deceptive Acts and Practices in Violation of General Business Law § 349; and as against Delta Bridge 6) Voidable Transfer pursuant to the Uniform Voidable Transactions Act.

## DISCUSSION

### I.  *Motions and Cross-Motions to Dismiss*

Movants filed motions and cross-motions to dismiss the petition rather than file answers to the petition. Pursuant to CPLR § 404, "[t]he respondent may raise an objection in point of law by setting it forth in his answer or by a motion to dismiss the petition, made upon notice within the time allowed for answer." An objection in point of law is a defense that can produce a summary dismissal of the proceeding as under CPLR 3211(a). As with a CPLR § 3211 motion, on a motion to dismiss a petition brought by special proceeding "only the petition is to be considered, all of its allegations are to be deemed true, and the petitioner is to be accorded the benefit of every possible inference" (*Matter of Golden Horizon Terryville Corp. v Prusinowski*, 63 AD3d 930, 934 [2d Dept 2009]; *see also Felice v Swezey,* 278 AD 958 [2d Dept 1951]]).

Here, in their motions and cross-motions to dismiss, some respondents make both objections in law, as well as objections in fact. At this juncture, only the objections in law will be considered since pre answer motions to dismiss should not involve a contest of the factual assertions of the claims and instead should focus solely on legal defenses as contemplated in CPLR § 3211(a) (*see Garcia v. Rhea,* 85 A.D.3d 549, 924 N.Y.S.2d 790 [1st Dept 2011]; *and also In Re Bernstein Family, Ltd. Partnership,* 66 A.D.3d 1, 883 N.Y.S.2d 201 [1st Dept 2009]).

450750/2024  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 4 of 28
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

4 of 28

Therefore, the facts as alleged in the petition are accepted as true and any objections to the factual allegations contained in the petition will not be considered.

### A. Summary Proceeding

Respondents argue that by initiating this action as a summary proceeding pursuant to CPLR § 409, they are being deprived of their due process rights. They posit that the NYAG seeks to significantly hamper their interests, by initiating a special proceeding rather than a plenary action, thereby risking an erroneous deprivation of their business and property interests. Respondents further argue that there is already a regulatory scheme in place to regulate the MCA industry, and that by bringing this proceeding, the NYAG seeks to create a common-law rule when the appropriate vehicle for regulation is through the Financial Services Law.

### i. Due Process Rights

CPLR § 409 provides:

> (a) Furnishing of papers; filing. Upon the hearing, each party shall furnish to the court all papers served by him. The petitioner shall furnish all other papers not already in the possession of the court necessary to the consideration of the questions involved. Where such papers are in the possession of an adverse party, they shall be produced by such party at the hearing on notice served with the petition. The court may require the submission of additional proof. All papers furnished to the court shall be filed unless the court orders otherwise.
>
> (b) Summary determination. The court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised. The court may make any orders permitted on a motion for summary judgment.

The constitutional protections affording entities due process of law requires an opportunity to be heard at a "meaningful time and in a meaningful manner" (*Armstrong v Manzo*, 380 US 545, 552, [1965]). The opportunity to be heard must be appropriate to the nature of the case, thus the concept of due process is flexible and the protections are dependent upon what the

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 5 of 28

5 of 28

individual situation demands (*People by Abrams v Apple Health and Sports Clubs, Ltd., Inc.*, 80 NY2d 803 [1992] [*citing Armstrong v Manzo*, 380 US 545, 552 [1965]; *and also citing Mathews v Eldridge,* 424 US 319, 334 [1976]]).

Executive Law § 63(12) provides:

> "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages and, in an appropriate case, cancelling any certificate filed under and by virtue of the provisions of section four hundred forty of the former penal law or section one hundred thirty of the general business law, and the court may award the relief applied for or so much thereof as it may deem proper.

Executive Law § 63(12) authorizes the NYAG to seek an injunction to enjoin a person or an entity from continuing to conduct or transact business, when that person or entity engages in repeated fraudulent or illegal acts or demonstrates fraud or illegality in the manner in which it conducts its business (*Matter of Evergreen Ass'n, Inc. v Schneiderman*, 153 AD3d 87 [2d Dept 2017]).

In *Apple Health*, as here, the proceeding was initiated pursuant to Executive Law § 63(12) to enjoin a health club and its owners from entering into any new business transactions until they complied with certain security requirements (*Apple Health*; 80 NY2d at 804). The Court of Appeals held that the respondent's due process rights were not violated noting that (1) the respondents were aware that the NYAG was conducting an investigation of their business for some time so the proceeding was not a surprise; (2) that prior negotiations with the NYAG had

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 6 of 28
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

[* 6]                                                          6 of 28

apprised respondents of the underlying facts alleged by the NYAG; and (3) that the respondents had an opportunity to oppose the summary proceeding (*id*. at 807).

Likewise, here, respondents were aware of the years long investigation into Yellowstone, Delta Bridge, and the individual respondents' business practices (NYSCEF Doc No 1 at ¶ 111). The NYAG served investigative subpoenas on Yellowstone and Delta Bridge, and obtained documents and testimony from numerous current and former officers, owners, associates, agents, and employees of Yellowstone and Delta Bridge, including some of the individual respondents (*id*. at ¶¶ 112 – 116). Therefore, this proceeding cannot be said to have been a surprise to respondents and they have had an opportunity to oppose this summary proceeding by filing their opposition and their motions to dismiss.

Further, while respondents argue that they are entitled to a jury trial, Executive Law § 63(12) is an equitable statute and when equitable relief is sought, there is no right to a jury trial (*Motor Veh. Mfrs. Ass'n of U.S., Inc. v State*, 75 NY2d 175, 181 [1990]; *see Lenel Sys. Intern., Inc. v Smith*, 106 AD3d 1536 [4th Dept 2013] [holding that rescission is an equitable remedy]; *see also People by James v Richmond Capital Group LLC*, 80 Misc 3d 1213(A) [NY Co SC 2023] ["Rescission is an equitable remedy available to the NY AG in a case brought pursuant to Executive Law § 63(12) in order to restore the status quo"]; *and see The People of the State of New York v First Am. Corp.*, 2011 NY Slip Op 33061[U] [NY Co SC 2011] [reasoning that "there is no right to a jury trial in actions for civil penalties and equitable relief under state consumer protection statutes [including under Executive Law § 63(12), and General Business Law § 349], primarily because these proceedings were unknown at common law"]).

Therefore, respondents due process rights have not been violated by the commencement of this special proceeding, and it will not be dismissed on these grounds.

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 7 of 28

7 of 28

[* 7]

### ii.     *Financial Services Law*

Respondents also argue that the NYAG acted beyond the scope of her authority by initiating this proceeding pursuant to Executive Law § 63(12), because the legislature enacted Financial Services Law §§ 800-812, to regulate the MCA industry. Respondents contend that these statutes authorize the Superintendent of the Department of Financial Services to enforce violations of the sales-based finance law and its regulations, and thus do not allow the NYAG to initiate an action pursuant to Executive Law § 63(12).

Financial Services Law § 812 provides:

> (a) Upon a finding by the superintendent that a provider has violated the provisions of this article or the rules or regulations promulgated hereunder, the provider shall be ordered to pay to the people of this state a civil penalty for each violation of this article or any regulation or policy promulgated hereunder a sum not to exceed two thousand dollars for each violation or where such violation is willful ten thousand dollars for each violation.

> (b) In addition to any penalty imposed pursuant to subdivision (a) of this section, upon a finding by the superintendent that a provider has knowingly violated this article, the superintendent may order additional relief, including, but not limited to, restitution or a permanent or preliminary injunction on behalf of any recipient affected by the violation.

While, Financial Services Law § 812 authorizes the superintendent to enforce the provisions of the statute, respondents cite no authority that the Department of Financial Services has exclusive jurisdiction over these matters. Indeed "the Attorney General acts in that capacity when [s]he invokes [her] authority under Executive Law § 63(12) to enjoin repeated fraudulent acts in the carrying on of business and seeks restitution and damages therefor" (*State v Astro Shuttle Arcades, Inc.*, 221 AD2d 198, 198 [1st Dept 1995]).

**450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005**

**Page 8 of 28**

8 of 28

[* 8]

That the Department of Financial Services has jurisdiction to enforce the Financial Services Law does not divest the NYAG of her authority to initiate an Executive Law § 63(12) proceeding against respondents engaged in allegedly fraudulent activity (*see People ex rel. Cuomo v Coventry First LLC,* 52 AD3d 345, 346 [1st Dept 2008], *affd,* 13 NY3d 108 [2009] ["[C]laim pursuant to Executive Law § 63 (12), constituted proper exercises of the State's regulation of businesses within its borders in the interest of securing an honest marketplace," even when respondent is also subject to regulation enforced by Department of Insurance]).

By "authorizing the Attorney General to sue for any repeated or persistent fraud or illegality, the Legislature necessarily invested that party with authority to seek relief" (*People by James v Trump*, 217 AD3d 609, 610 [1st Dept 2023]), and therefore, the petition will not be dismissed on these grounds.

### B. Failure to State a Cause of Action

Delta Bridge argues that the causes of action under Executive Law § 63(12) must be dismissed because petitioner has failed to state a cause of action with sufficient particularity, because the NYAG fails to allege conduct that is actually unlawful. Delta Bridge argues that the NYAG is supplanting her own view of "fraud" which is contradicted by the legislation that is already regulating the field of MCAs.

When reviewing a "motion to dismiss for failure to state a cause of action … [courts] must accept the facts as alleged in the complaint as true, accord the [petitioner] the benefit of every reasonable inference, and determine only whether the facts, as alleged fit within any cognizable legal theory" (*Bangladesh Bank v Rizal Commercial Banking Corp*., 226 AD3d 60, 85-86 [1st Dept 2024] [internal quotations omitted]). "In making this determination, [the court is] not authorized to assess the merits of the complaint or any of its factual allegations" (*id.* at 86

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 9 of 28

9 of 28

[internal quotations omitted]). Further "[i]n assessing [the] motion, ... the criterion is whether the proponent of the pleading has a cause of action, not whether [they have] stated one" (*Eccles v Shamrock Capital Advisors, LLC*, 42 NY3d 321 [2024] [internal quotation marks omitted]).

To state a cause of action under Executive Law § 63(12), the NYAG must allege persistent wrongdoing within the meaning of the statute, that is acts which are either illegal or fraudulent (*People ex rel. Cuomo v Wells Fargo Ins. Services, Inc.*, 62 AD3d 404 [1st Dept 2009], *affd*, 16 NY3d 166 [2011]). "A special proceeding, as authorized by Executive Law § 63 (12), is intended as an expeditious means for the Attorney- General to prevent further injury and seek relief for the victims of business fraud" (*People v Apple Health and Sports Clubs, Ltd., Inc.*, 206 AD2d 266, 268 [1st Dept 1994]). In the context of a § 63(12) proceeding:

> The word "fraud" or "fraudulent" … shall include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions. The term "persistent fraud" or "illegality" as used herein shall include continuance or carrying on of any fraudulent or illegal act or conduct. The term "repeated" as used herein shall include repetition of any separate and distinct fraudulent or illegal act or conduct which affects more than one person.

(Executive Law § 63(12)).

Here, petitioner asserts five causes of action pursuant to Executive Law § 63(12) alleging specific illegal or fraudulent activity as (1) Illegal Acts in the Form of Usury; (2) Illegal Acts in the Form of Criminal Usury; (3) Illegal Acts in the Form of Engaging in the Business of Making High-Interest Loans Without a License in Violation of Banking Law §§ 340 and 356; (4) Fraud; (5) Deceptive Acts and Practices in Violation of General Business Law § 349.

i.    *Civil and Criminal Usury*

Pursuant to New York Banking Law § 14-a (1), a lender commits civil usury when it loans money at an interest rate higher than 16% per annum. Pursuant to Penal Law § 190.40:

450750/2024  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 10 of 28

10 of 28

> A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

The NYAG alleges that respondents repeatedly offered loans at interest rates far surpassing the interest rate limits of both civil and criminal usury (NYSCEF Doc No 1 ¶¶ 462 – 465). The NYAG further alleges that while respondents labeled their agreements with small businesses as MCAs but in reality the agreements were merely designated as MCAs to allow respondents to enter into loans with astronomical interest rates, at times as high as 819% of the original loan (*id*. at ¶ 465).

"When determining whether a transaction is a loan, substance—not form—controls" (*Adar Bays, LLC v GeneSYS ID, Inc.*, 37 NY3d 320, 334 [2021]). "[T]he transaction must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it" (*Oakshire Properties, LLC v Argus Capital Funding, LLC*, 229 AD3d 1199, 1201 [4th Dept 2024]). The primary question as to whether a transaction constitutes a loan is whether the lender "is absolutely entitled to repayment under all circumstances" (*Samson MCA LLC v Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*, 219 AD3d 1126, 1128 [4th Dept 2023]). Courts typically weigh three factors when determining whether repayment is absolute, "(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy" (*id*.). "[I]f the ability of the merchant to reconcile is merely illusory, then the agreement is simply a usurious loan" (*Bridge Funding Cap LLC v SimonExpress Pizza, LLC*, 240 AD3d 1186, 1192 [4th Dept 2025]).

450750/2024  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 11 of 28

11 of 28

a. *Reconciliation*

In the MCA context a reconciliation provision requires that upon a merchant's request its Daily Payment is adjusted based on changes in the merchant's revenue (*id*. at 1189). The reconciliation process is a mechanism allowing a merchant the means to renegotiate and receive a refund of some portion of its daily payments if the merchant suffers a loss in revenue (NYSCEF Doc No 1 ¶ 125). Because MCA agreements are based upon a purchase of a percentage of a merchants' future revenue, a proper reconciliation process allows a merchant to adjust its daily payments to better represent that percentage if it suffers a loss of revenue. A merchant applying for Daily Payment adjustment through reconciliation is required to show that the merchant's revenue has fallen to the point where their Daily Payment represents a higher percentage of their actual revenue than the Specified Percentage[4] listed in their agreements (*id*. at ¶ 127).

Petitioner alleges that the MCA agreements purport to calculate the daily payments, that is the Daily Amounts, which merchants are required to pay to respondents, are based upon a percentage of the merchant's revenue, that is the Specified Percentage (*id*. at ¶ 481). Indeed, included in the agreements is a clause stating that the "Daily Payment" is a "good faith approximation" of the "Specified Percentage", based on the merchant's prior receipts (*see* NYSCEF Doc No 97 at p 12). However, petitioner alleges that the figures were not related to one another, and the Daily Payments were calculated strictly based upon a timeframe for a repayment schedule (*id*. at ¶ 10, 139 – 140[5], 155, 168).

---

[4] Specified Percentage refers to a percentage of a merchant's daily revenue received from the sale of goods and services (NYSCEF Doc No 1 at ¶ 123).

[5] Petitioner alleges that individual Yellowstone and Delta Bridge Funders testified that the daily payments had no correlation with the specified percentage of receivables purchased, and that the deals themselves are based solely on the fixed daily amount in a repayment plan (*see* NYSCEF Doc No 18 at 97:8 – 98:25).

**450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL Motion No.  001 003 005**                                                                    **Page 12 of 28**

12 of 28

Petitioner alleges that respondents set the Specified Percentage at inflated rates to ensure merchants would be unable to adjust their payments through the reconciliation process. Respondents allegedly intentionally set the Specified Percentage at such high rates, that it was impossible for merchants to engage in the reconciliation process (*id*. at ¶ 182). By April 2020, the most commonly used Specified Percentage in respondents MCA contracts was 49%, despite vastly different, cash advance amounts, daily amounts, and actual merchant revenue (*id*. at ¶ 226). Petitioner further alleges that funders were encouraged to inflate Specified Percentages if they wanted to avoid giving merchants a refund (NYSCEF Doc No 1 at ¶ 230; *see also* NYSCEF Doc No 371 [text message exchange between respondents Stern and Glass stating "If funders don['t] want [to issue refunds], they can [m]ake the specified [percentage] high"). Respondent Maczuga, former Yellowstone CEO, testified that it was his assumption that funders were raising the Specified Percentage on the MCA agreements because of the increased availability of the reconciliation process (NYSCEF Doc No 16 at 270:6 – 270:10). Thus, argues petitioner, the reconciliation process was illusory because while it was an available remedy to merchants in the MCAs, a merchant would be unable to utilize it as the prerequisites were nearly impossible to meet and as such a significant loss in revenue would likely put merchants out of business.

A party properly pleads that an agreement is a loan when they plead that a lender selects "daily payment rates [and specified percentages] that do not appear to represent a good faith estimate of receivables" *Davis v Richmond Capital Group, LLC*, 194 AD3d 516 [1st Dept 2021]). For example, petitioner pleads that Delta Bridge, entered into a purported MCA agreement with a merchant, Cookies Restaurant Group LLC ("Cookies") in Catskill, New York, on February 25, 2022 (NYSCEF Doc No 1 at ¶ 242). The agreement includes a Daily Amount of $208.00 and a Specified Percentage of 49%. It further states that the Daily Amount is "a good

450750/2024  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 13 of 28
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

13 of 28

faith approximation of the Specified Percentage of [Cookies'] Future Receipts" (*id*.; *see also* NYSCEF Doc No 475 at p 30 – 46). However, petitioner alleges that $208.00 was roughly between 13% and 18% of Cookies' average daily revenue (NYSCEF Doc No 1 at ¶ 243). Because of this discrepancy, when Cookies experienced a loss in revenue and sought to engage in reconciliation to reduce their Daily Amount, Delta Bridge denied the request as Cookies revenue had not fallen to a degree where $208.00 was more than 49% of their daily revenue. Thus, petitioner has sufficiently alleged that the reconciliation process is purely illusory since it is virtually impossible for merchants to engage in the reconciliation process absent a complete collapse in revenue.[6]

b. *Finite Terms*

Petitioner further supports the argument that the agreements were in fact loans by alleging that the MCA agreements have fixed and finite terms, which. When a contract contains indefinite repayment terms, it "suggest[s] that the repayment obligation may have been contingent rather than absolute [which] suggests a sale and purchase of receivables rather than a loan" (*Kapitus Servicing, Inc. v Point Blank Constr., Inc.*, 221 AD3d 532, 534 [1st Dept 2023]). This is because a purchase of sale proceeds is necessarily contingent upon the business actually generating sales and those sales producing revenue (*see K9 Bytes, Inc. v Arch Capital Funding, LLC*, 56 Misc 3d 807 [SC Westchester Co 2017]).

It is undisputed that the MCA agreements here include daily payments suggesting that they are loans with fixed finite terms. However, "[w]hether the agreement has a finite term is

---

[6] Assuming that $208.00 actually represented 15% of Cookies revenue, their daily revenue was $1386.66. Pursuant to the contract however to engage in reconciliation, their daily revenue would need to fall to below $424.48, as this is the point where $208.00 would represent more than 49 percent of Cookies revenue, thus allowing reconciliation. Therefore, in order to be entitle to the reconciliation process Cookies revenue would need to fall by nearly 70%, which as petitioner argues would be near fatal for most businesses.

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 14 of 28

14 of 28

entirely dependent upon whether the agreement has a *valid* reconciliation provision" (*Bridge Funding Cap LLC v SimonExpress Pizza, LLC*, 240 AD3d 1186, 1191 [4th Dept 2025], *lv to appeal denied,* 243 AD3d 1379 [4th Dept 2025]). The petition alleges that the MCA agreements at issue here only permit payment adjustments through the reconciliation process. As explained above, the NYAG has adequately plead that the reconciliation process is illusory and thus has also adequately alleged that the terms of the contract are finite. As such both of the first two factors support the allegations that the contracts were not MCAs but rather loans.

### c. *Bankruptcy Recourse*

Finally, the third factor to consider is whether the MCA agreement provides the MCA company with any recourse if the merchant is the subject of a bankruptcy proceeding (*Kapitus Servicing, Inc. v Point Blank Constr., Inc.*, 221 AD3d 532 [1st Dept 2023]). When an agreement provides the MCA company with recourse in the event that the merchant becomes the subject of a bankruptcy proceeding that indicates that the agreement is a loan because it "suggest[s] that the [MCA company] did not assume the risk that [the merchant] would have less-than-expected or no revenues" (*LG Funding, LLC v United Senior Properties of Olathe, LLC*, 181 AD3d 664, 666 [2d Dept 2020]).

Here, as alleged in the petition, respondents' MCA agreements include clauses granting them security interests against a merchant's assets (NYSCEF Doc No 1 ¶ 388). The agreements provide:

> As security for the prompt and complete payment and performance of any and all liabilities, obligations, covenants or agreements of Seller under this Agreement … Seller hereby pledges, assigns and hypothecates to Buyer (collectively, "Pledge") and grants to Buyer a continuing, perfected and first priority lien upon and security interest in, to and under all of Seller's right, title and interest in and to the following (collectively, the "Collateral") ….

**450750/2024  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL Motion No.  001 003 005**

**Page 15 of 28**

15 of 28

> i. all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Seller; and
>
> ii. all Seller's proceeds, as such term is defined by Article 9 of the UCC.

(NYSCEF Doc No 7 at 8 ¶ 21).

A clause in an MCA agreement creating a UCC Article 9 security interest is a recourse available to the MCA company in the event that the merchant is the subject of a bankruptcy proceeding and further suggests that an MCA is a loan (*see Fintegra LLC v DNA Telecom Inc*, 2024 N.Y. Slip Op. 32206[U] [SC Kings Co 2024]). Moreover, respondents' MCA agreements also include power-of-attorney clauses allowing respondents to bypass the merchants and collect payments directly from the merchant's customers (NYSCEF Doc No 7 at 9 ¶ 28). This too suggests that the MCA agreements are loans as it indicates that the respondents did not assume the risk of the merchants' potential declining revenues (*Fintegra*, 2024 NY Slip Op. 32206[U] at **8).

Finally, petitioner alleges that the respondents required personal guaranties in order to enter into the agreements. The recourse as against the guarantors was unfettered and continued even if the merchants declared bankruptcy (*see* NYSCEF Doc No 7 at 13 ¶ 4 "The obligation of Guarantor shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between [merchant] and [Delta Bridge], or the existence of any defense, setoff or counterclaim, which [merchant] may assert"). Respondents requiring personal guaranties further suggests that the MCA agreements are in fact loans as respondents have ample recourse to enforce payments if the merchants declared bankruptcy (*Davis*, 194 AD3d at 517).

**450750/2024  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL Motion No. 001 003 005**

**Page 16 of 28**

16 of 28

Therefore, accepting the facts as alleged in the petition as true, all three factors suggest that the purported MCAs were in fact loans.

### d. Interest Rate

The analysis now must shift to whether the NYAG has adequately plead that the purported loans were usurious. "[T]he formula to calculate the applicable interest rate is (A/P)/(T/M) where A is interest amount, P is the principal amount, T is the number of days in the term, and M is the number of business days in a year" (*People by James v Richmond Capital Group LLC*, 80 Misc 3d 1213(A) [SC NY Co 2023]). Again, using the agreement with Cookies as an example, the principal amount[7]" is $15,000, the "interest"[8] would be $6,885.00, the days in the term would be 105 (which represents the number of days the daily amount of $208.00, would pay off the full "Purchased Amount"), and the number of business days in a year is 251 (*see id*. at *13). Thus, to calculate the interest rate for this agreement the proper formula is ($6,885/$15,000)/(105/251), which results in an interest rate of 109.72% (*see* NYSCEF Doc No 474 at ¶ 50), well in excess of both the civil, and criminal usury rates.

While, the veracity of the factual allegations will not presently be addressed, since respondents first moved to dismiss the cause of actions for failure to state a claim, where the allegations in the petition must be read as true, and the NYAG has adequately plead the first (Illegal Acts in the Form of Usury) and second (Illegal Acts in the Form of Criminal Usury) causes of action in that she alleges that the respondents have repeatedly offered illegal usurious loans and accordingly, these causes of action will not be dismissed.

---

[7] While, the purported MCAs refer to this figure as a Purchase Price, if the agreement is to be interpreted as a loan, it would refer to the principle.

[8] Similarly, the purported MCAs refer to this as the "Purchased Amount" (here, actually referred to as $21,885.00), which represents the amount, once paid to respondents in Daily Payments would complete the agreement.

**450750/2024 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL Motion No. 001 003 005**

**Page 17 of 28**

17 of 28

*ii.* *Fraud*

"Under [Executive Law] section 63 (12), the test for fraud is whether the targeted act has the capacity or tendency to deceive or creates an atmosphere conducive to fraud" (*People ex rel. Spitzer v Gen. Electric Co., Inc.,* 302 AD2d 314 [1st Dept 2003]). The statute was meant not only to protect a reasonable consumer but "the ignorant, the unthinking and the credulous" as well (*id*. [*quoting Guggenheimer v Ginzburg,* 43 NY2d 268, 273 [1977]]). Thus, "fraud" in the context of § 63(12) is intended to be interpreted liberally and "may be established without proof of scienter or reliance" (*Matter of People by Schneiderman v Trump Entrepreneur Initiative LLC*, 137 AD3d 409, 417 [1st Dept 2016]).  Instead "the test for fraud is whether the targeted act has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud" *People ex rel. Spitzer v Gen. Electric Co., Inc.*, 302 AD2d 314, 314 [1st Dept 2003]). For example, causing an entity to enter into "unconscionable contract provisions" constitutes fraud within its meaning in Executive Law § 63(12) (*People by Schneiderman v Credit Suisse Sec. (USA) LLC*, 31 NY3d 622, 636 [2018]).

Here, petitioner alleges that respondents misrepresented the nature of the agreements they entered into with merchants by calling them MCAs when they were in actuality, usurious loans. As stated above petitioner alleges that while these agreements purported to be within the legal structure of an MCA, the provisions which would distinguish them as legal MCAs were merely illusory, intended to circumvent the limitations of the usury laws.

Petitioner further alleges that in addition to misrepresenting the contracts themselves, and the meanings of the terms in the contract as discussed above, respondents  also falsely advertised and promoted their businesses by representing to merchants that the contracts did not require personal guarantees, that the contracts have flexible repayment plans, and that respondents would

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL Motion No.  001 003 005

Page 18 of 28

18 of 28

[* 18]

provide merchants with "lines of credit" that they did not actually provide (NYSCEF Doc No 1 at ¶ 840).

For example, petitioner alleges that respondents advertised that their MCAs offered flexible repayment, stating that "The biggest advantage that [MCAs] can offer are flexibility in repayment. Instead of a hard and fast amount due every month, a merchant cash advance is repaid by taking a fixed percentage of your daily sales at the end of every business day" (*id*. at ¶ 516)[9]. Petitioner submits an affidavit from a merchant, Jerry Bush who avers that when he began interacting with Respondents, the broker told him that if his company ever had trouble making payments, they would work with him to adjust the amount owed (NYSCEF Doc No 28 ¶ 44). However when his company suffered a loss in revenues, respondents refused to adjust his payments, only offering him a renewal contract under the same terms which ultimately only compounded the debt owed (*id*. at ¶ 47). Mr. Bush further states that he was coerced into entering the renewal deal, with the respondent, Tsvi Davis pressuring him by stating that if he did not agree to renewal, respondents would take all the money Mr. Bush had remaining, leaving him nothing to pay for his wife's cancer treatments (*id*. at ¶ 51). Davis allegedly later told Bush that the only way Bush could avoid paying his debt would be if he was dead, which Bush avers ultimately lead to an unsuccessful suicide attempt (*id*. at ¶¶ 59 – 62).

Petitioner also alleges that the respondents would advertise that there was no requirement for merchants to secure their cash advance with a personal guarantee (NYSCEF Doc No 1 ¶ 523; *see also* NYSCEF Doc No 438 at p 29 [advertisement stating "We offer a wide range of worry-free ;loans and cash advances that come with very flexible repayment options.

---

[9] An additional advertisement created by respondents stated "Rather than have a set payment amount for you to meet each month, we have a percentage payment plan that works with your monthly sales. Having a slow month? Then you're required to payback less that month." (*id*.; *see also* NYSCEF Doc No 436 [transcript of respondents audio advertisemnts]).

450750/2024  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 19 of 28

19 of 28

Best of all we do not require any of the following from our clients … Personal guarantees"). However, respondents MCAs did require a personal guarantee, and the agreements required collateralization against merchant property which exceeded the revenue that respondents purported to be investing in (NYSCEF Doc No 1 ¶¶ 522 – 525). Finally, petitioner alleges that respondents, through their sales reps and brokers would coerce merchants into signing their contracts by promising future financing, such as lines of credit, with more desirable terms than their MCAs (*id*. at ¶ 526).

For example, petitioner submits the affidavit of merchant David Israel, who states that when he first began working with Delta Bridge, he was told that if he agreed to the MCA and made 3 – 4 months of on time payments, that he would be able to convert the transaction into an open line of credit with a lower interest rate (NYSCEF Doc No 34 ¶ 4). However, respondent Davis testified that respondent never had a "line of credit" program and the only additional financing that the companies provide is additional MCAs (NYSCEF Doc No 11 at 274:19 – 275:4; 276:2 – 276:20).

Accepting the facts as alleged in the petition as true petitioner has adequately stated a cause of action for fraud under Executive Law § 63(12). Petitioner has plead that respondents created an environment in which "the capacity or tendency to deceive … creates an atmosphere conducive to fraud" (*Spitzer*, 302 AD2d 314). Accordingly, the fourth cause of action will not be dismissed.

### iii. *Banking Law §§ 340 and 356*

Banking Law § 340 provides, in relevant part:

> No person or other entity shall engage in the business of making loans in the principal amount of twenty-five thousand dollars or less for any loan to an individual for personal, family, household, or investment purposes and in a principal amount of fifty

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No. 001 003 005

Page 20 of 28

20 of 28

thousand dollars or less for business and commercial loans, and charge, contract for, or receive a greater rate of interest than the lender would be permitted by law to charge if he were not a licensee hereunder except as authorized by this article and without first obtaining a license from the superintendent.

Banking Law § 356 provides, in relevant part:

No person or other entity, other than a licensee under this article, shall directly or indirectly charge, contract for, or receive any interest, discount, or consideration greater than the person or other entity would be permitted by law to charge if it were not a licensee hereunder upon a loan not exceeding the maximum amounts prescribed in section three hundred forty of this article.

Respondents argue that petitioner has failed to state a cause of action under Banking Law §§ 340 and 356, because the petition does not allege that the respondents entered into loans with individuals. However, Banking Law § 340, is not exclusively applied to making loans to individuals and also applies to businesses[10]. Further, the MCAs often required an individual to sign on as a guarantor. Accordingly, petitioner has alleged a cause of action under Banking Law §§ 340 and 356, and the third cause of action will not be dismissed.

iv.     *General Business Law § 349*

General Business Law § 349 states, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." "Under General Business Law § 349, the plaintiff must prove that the challenged act or practice 'was misleading in a material way', and 'the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances'" (*Gen. Electric*, 302 AD2d at 315 [*quoting Stutman v Chemical Bank,* 95 NY2d 24, at 29]). General Business Law § 349 is intended to protect both individual consumers, as well as business who are affected by

---

[10] Banking Law § 340 provides that an entity may not make loans to individuals in excess of $25,000, or to businesses in excess of $50,000 without a license.

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 21 of 28

21 of 28

deceptive business practices (*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc.*, 37 NY3d 169 [2021]). Here as stated above, petitioner has alleged that by advertising and presenting its transactions as including terms and options which the contracts did not actually include, respondents engaged in practices that were likely to mislead a reasonable business seeking funding.

Accordingly, as with the fourth cause of action for fraud, the allegations in the petition adequately allege that the respondents' business practice consisted of deceptive acts and the fifth cause of action will not be dismissed.

## C. Individual Liability

Individual defendants, Mark Sanders, Matthew Melnikoff, David Singfer, Aaron Davis, David Glass, Tsvi (Steve) Davis, Bartosz Maczuga, and Vadim Sereboro each move, or cross-move to dismiss the petition as asserted against them individually. The individual defendants' arguments that the petition failed to properly allege that the purported MCAs were usurious loans are unavailing for the reasons indicated above. However, in addition to adopting Delta Bridge's argument regarding the sufficiency of the petition, the individual respondents raise several additional defenses regarding their own liability.

### i. Involvement / Knowledge of Fraudulent Acts

The individual respondents, Glass, Maczuga, and Serebro (collectively the "Officer Respondents"), and Aaron Davis, Tsvi Davis, Melnikoff, Sanders, and Singfer (collectively the "Funder Respondents"), each argue that the petition fails to adequately allege that they individually participated in, or had knowledge of the allegedly fraudulent and illegal acts to assign liability under Executive Law § 63(12).

**450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL Motion No.  001 003 005**

**Page 22 of 28**

[* 22]

22 of 28

"Officers and directors of a corporation may be held liable for fraud [under Executive Law § 63(12)] if they participate in it or have actual knowledge of it" (*People by Abrams v Apple Health and Sports Clubs, Ltd., Inc.*, 80 NY2d 803, 807 [1992]). As a preliminary matter Serebro first argues that he is not an officer or a director, and thus knowledge would be insufficient to establish liability, and the petition must plead participation in the illegal acts. However, it is undisputed that Serebro used titles such as Chief Litigation Officer, General Counsel, and Chief Strategy Officer (NYSCEF Doc No 558 at p 18), and while Serebro argues that "it is an employee's duties and responsibilities—rather than his actual title—that determine whether he is an officer" (*C.R.A. Realty Corp. v Crotty*, 878 F2d 562, 566 [2d Cir 1989]), at this juncture petitioner has adequately alleged that Serebro was a corporate officer as it alleges that he was personally involved in both the drafting of the MCA language, as well as implementing strategy, policies, and practices employed by Delta Bridge (NYSCEF Doc No 1 ¶¶ 703, 804).

Moreover, accepting the allegations in the petition, as true petitioner has adequately alleged that Serebro had active involvement with the alleged issuance of usurious loans, meaning he could be held personally liable even if he was not a corporate officer. For example, petitioner alleges that Serebro instructed funders that all purported MCA contracts should state a Specified Percentage of 25% regardless of its relation to the merchant's actual revenue (*id*. at ¶¶ 220, 807). The petition further alleges that Serebro personally invested in the purported MCAs through a company he owned and operated and further profited through his operation of a collection company, Max Recovery LLC, which he owned and controlled (*id*. at ¶¶ 816-17). Therefore, the petition adequately states a cause of action under Executive Law § 63(12) against Serebro and it will not be dismissed. Glass and Maczuga do not dispute that the petition adequately alleges their

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 23 of 28

23 of 28

[* 23]

knowledge and involvement and instead argue that this court lacks personal jurisdiction over them, which will be addressed below.

As for the Funder Respondents, the petition adequately alleges that each Funder Respondent was individually responsible for negotiation, issuing, and collecting upon the purported MCA agreements (*id*. at ¶¶ 97-108; *see People v N. Leasing Sys., Inc.*, 169 AD3d 527 [1st Dept 2019] [petition demonstrates awareness and participation of fraud scheme and thus states a cause of action against individual respondents when it alleges that individual respondents relied on unconscionable contract terms when enforcing agreements]).

While Funder Respondents also argue that they were acting through corporate entities and thus cannot be held individually liable, at this juncture the petition sufficiently alleges that the Funder Respondents had actual knowledge and participated in the fraudulent scheme and since use of a corporate form cannot shield individuals from liability for fraudulent and illegal activity the petition will not be dismissed on these grounds (*see People by Koppell v Empyre Inground Pools Inc.*, 227 AD2d 731, 734 [3d Dept 1996] ["[C]orporate veil may be pierced to hold [individuals] personally liable for tortious conduct or knowing participation in fraudulent acts," within Executive Law § 63(12)]; *see also People v Concert Connection, Ltd.*, 211 AD2d 310, 320 [2d Dept 1995] ["To hold otherwise would be an open invitation to individuals to form shell corporations for the purpose of shielding themselves from liability for illegal business transactions"]).

Similarly, the Funder Respondents' argument that they cannot be held liable because they were acting as independent contractors, and individually were not parties to the purported MCAs must be rejected because actual knowledge and participation in a fraudulent scheme, or illegal activity, is sufficient to hold an independent contractor individually liable within the context of

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 24 of 28

24 of 28

Executive Law § 63(12) (*People by Schneiderman v Orbital Publ. Group, Inc.*, 169 AD3d 564 [1st Dept 2019]; *see also Davis v Richmond Capital Group, LLC*, 194 AD3d 516 [1st Dept 2021] [dismissing breach of contract claims against individual defendants, however declining to dismiss claims premised on illegal and fraudulent activity as here]).

Finally, while the Funder Respondents make several objections as to the veracity of certain facts alleged in the petition, at this juncture where the petition must be accepted as true, respondents have failed to present documentary evidence pursuant to CPLR § 3211(a)(1) which "utterly refutes [petitioner]'s factual allegations" (*Mill Fin., LLC v Gillett*, 122 AD3d 98, 103 [1st Dept 2014]). Therefore, petitioner has adequately stated claims against the individual defendants and the petition will not be dismissed on these grounds.

### ii. Personal Jurisdiction

Respondents, Glass, Maczuga, and Singfer argue that this court cannot assert personal jurisdiction over them since they are not New York domiciliaries. CPLR § 302(a) provides that a non-domiciliary is subject to New York court's jurisdiction if they:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act

Additionally, long arm jurisdiction must comport with constitutional due process meaning that the respondents had "certain minimum contacts with [New York] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" (*LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 216 [2000]). Here, Glass, Maczuga, and Singfer all played significant roles in the operation of Yellowstone, a New York entity (NYSCEF Doc

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 25 of 28

25 of 28

No 1 ¶¶ 26, 85, 92). Glass and Maczuga also oversaw the transfer of Yellowstone assets to Delta Bridge (*id*. at ¶¶ 73-76, 741-44). Further, Maczuga and Singfer, as Funders for Yellowstone and Delta Bridge, regularly transacted business with New York merchants (*id*. at ¶¶ 413, 551, 556, 559). Since the petition alleges active knowledge and participation by these respondents as explained above, this court has jurisdiction pursuant to CPLR § 302(a)(1), and these contacts meet the standards as to satisfy due process. Accordingly the petition will not be dismissed on lack of personal jurisdiction grounds.

### D. Successor Liability

Finally, Delta Bridge argues that its liability should be limited as the petition fails to adequately plead that it is Yellowstone's successor, and thus the claims predicated upon Yellowstone's actions should not be imputed to Delta Bridge. "The de facto merger doctrine creates an exception to the general principle that an acquiring corporation does not become responsible thereby for the pre-existing liabilities of the acquired corporation" (*Fitzgerald v Fahnestock & Co., Inc.*, 286 AD2d 573, 574 [1st Dept 2001]).

> The hallmarks of a de facto merger include: continuity of ownership; cessation of ordinary business and dissolution of the acquired corporation as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, continuity of management, personnel, physical location, assets and general business operation.

(*id.*).

"Not all of these elements are necessary to find a de facto merger [and] [c]ourts will look to whether the acquiring corporation was seeking to obtain for itself intangible assets such as good will, [intellectual property, or] customer lists" (*id*. at 574-75).

"Continuity of ownership … does not mean identity of ownership" (*Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd.*, 184 AD3d 116, 127 [1st Dept

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 26 of 28

26 of 28

2020]) and the questions of ownership should be "analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, 'it was the intent of [the successor] to absorb and continue the operation of [the predecessor]'" (*Tap Holdings, LLC v Orix Fin. Corp.*, 109 AD3d 167, 176 [1st Dept 2013]). Thus, continuity of ownership has been found where a shareholder held 20% of the predecessor and 72% of the successor (*Ladenburg Thalmann & Co., Inc. v Tim's Amusements, Inc.*, 275 AD2d 243 [1st Dept 2000]). Here, as alleged in the petition Maczuga had a 10% indirect ownership stake in Yellowstone and has a 55% indirect ownership stake in Delta Bridge through various entities he owns (NYSCEF Doc No 1 ¶ 573).

The petition also adequately alleges cessation of ordinary business by the predecessor, Yellowstone, and immediate continuation of business by successor entity, Delta Bridge. This factor is satisfied when the only business performed by the predecessor corporation is receipt and collection of payments (*see Matter of Pastor v State Tax Com'n*, 115 AD2d 144 [3d Dept 1985]). Here, the petition alleges that on May 21, 2021 Yellowstone transferred nearly all of its assets to Delta Bridge, and immediately ceased operation (NYSECF Doc No 1 ¶ 560). Delta Bridge allegedly then continued business uninterrupted on the next business day May 24, 2021 (*id*. at ¶ 561, 622).

While Delta Bridge argues that Yellowstone had not legally dissolved and continued to collect payments, and resolve claims with government entities, "legal dissolution is not necessary before a finding of a de facto merger will be made" (*Fitzgerald*, 286 AD2d at 575), and continued collection of payments and settlement of regulatory matters do not preclude a finding that a merger occurred (*see TAP Holdings, LLC v Orix Fin. Corp.*, 45 Misc 3d 1217(A) [NY Sup 2014]).

450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL
Motion No.  001 003 005

Page 27 of 28

27 of 28

Additionally, the petition alleges continuity of management since most of the Delta Bridge executives held the same position at Yellowstone (NYSCEF Doc No 1 ¶¶ 572-74). Yellowstone's middle management and junior employees were also transitioned to Delta Bridge at its inception (*id*. at ¶ 576, 577, 579). Finally, the petition alleges that the transfer of assets and employees was made with the intent of avoiding a judgment, out of a concern over Yellowstone's liability for claims of usury (*id*. at ¶¶ 652-55, 662-63). Therefore, considering the factors from *Fitzgerald* at this juncture, the petition adequately alleges a *de facto* merger and liability will not be limited.

Accordingly it is,

ORDERED that respondents' motions (MS #3, MS #5) and cross-motions on MS #1 to dismiss the petition are denied, and it is further

ORDERED that the remaining respondents are directed to file answers to the petition within 20 days of the date of this order and the petition brought by Notice of Petition (MS #1) is re-calendared to the submissions Part, Room 130 for April 7, 2026.

20260304151732PG0ETZE20224E0AF34E8CB925E00C4077E84A

**3/4/2026**
**DATE**

**PAUL A. GOETZ, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | X DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**450750/2024   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. YELLOWSTONE CAPITAL LLC ET AL Motion No.  001 003 005**

**Page 28 of 28**

28 of 28